Donna **BAKER et al., Plaintiffs,**

v.

**CINCINNATI METROPOLITAN HOUS-ING AUTHORITY, Defendant.**

Civ. No. C–1–78–38.

United States District Court, S. D. Ohio, W. D.

May 6, 1980.

John E. Schrider, Jr., Cincinnati, Ohio, for plaintiffs.

Booth Shepard, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

In this class action brought under 42 U.S.C. § 1983 plaintiffs seek declaratory

and injunctive relief as well as attorneys' fees for alleged violations of Section 8, Title II of the Community and Urban Development Act of 1974 (Section 8),[1] federal regulations and the United States Constitution. Defendants are Cincinnati Metropolitan Housing Authority (CMHA) and Henry Stefanik, sued individually and as executive director of the CMHA. Jurisdiction over this action is properly invoked pursuant to 28 U.S.C. § 1343.

Plaintiffs have filed a motion for summary judgment with documentation attached.[2] Defendants have responded with a cross-motion for summary judgment, also with documents attached.[3] The parties have stipulated to most of the germane facts.[4]

## I. THE COMPLAINT

### A. Plaintiffs' Complaint.

Plaintiffs' Second Amended Complaint is brought on behalf of "a class of persons comprised of all present and future applicants who have been or will be denied Section 8 benefits on the basis of inappropriate and arbitrary criteria, and who will be denied benefits without a due process hearing."[5] The complaint alleges that members of the class have been denied Section 8 Certificates of Family Participation and, consequently, rental assistance payments by reason of an arrearage resulting from prior tenancy in CMHA-owned public housing.

### B. Complaint of Plaintiff-Intervenors.

A motion to intervene and complaint were filed by plaintiff-intervenors;[6] leave to intervene was subsequently granted.[7] The complaint of plaintiff-intervenors alleges that members of the class were denied Section 8 certification because they are present residents of developments owned or operated by CMHA.[8]

### C. Contentions of Plaintiffs and Plaintiff-Intervenors.

In many respects, the contentions of the plaintiffs and plaintiff-intervenors are similar. Together, they present five separate arguments for resolution. First, plaintiffs claim that defendants' policies and practices conflict with federal statutes and regulations. Second, plaintiffs allege that the defendants' policies and practices violate the Equal Protection Clause. Plaintiffs next contend that defendants' failure to publish, distribute or post the policies and procedures for Section 8 certification violate the Due Process Clause, the National Housing Act and regulations. As a fourth contention, plaintiffs urge that defendants' exclusion of plaintiffs from Section 8 certification is an unlawful collection practice. Finally, plaintiffs charge that procedural inadequacies in the hearing afforded to ineligible Section 8 candidates are violative of the Due Process Clause.

## II. THE CLASS

Certification of the class was issued pursuant to Federal Rules of Civil Procedure 23(b)(2).[9] The class has been defined as follows:

All present and future applicants for Section 8 benefits under Title II of the Housing and Community Development Act of 1974, as amended, who have been or will be denied benefits on bases other than those consistent with the Equal Protection and Due Process clauses of the 14th Amendment to the United States Constitution, federal statutes and regulations. The class consists of two subclasses:

(1) *present* residents of CMHA developments who have been refused certification; and

---

1. 42 U.S.C. § 1437f (Supp.1975).

2. Doc. 25.

3. Doc. 26.

4. Doc. 24 and Plaintiffs' Exhibit 14.

5. Plaintiffs' Second Amended Complaint ¶ 12.

6. Doc. 17.

7. Docs. 29 and 30.

8. Complaint of Plaintiff-Intervenors ¶ 18.

9. Docs. 15 and 29.

(2) *past* residents of CMHA developments who (a) have been denied Section 8 certification because a balance is due in their CMHA account, and (b) have been denied a due process hearing upon denial of their application.

## III. *FEDERAL HOUSING SUBSIDY PROGRAMS*

Various types of federal housing subsidy programs impact on the issues presented. These programs and the role they play in this litigation will be examined individually.

### A. Conventional Public Housing.

Passage of the United States Housing Act of 1937[10] marked the inception of conventional public housing. Under conventional public housing, the federal government allocates funds to a public housing authority (PHA) which, in turn, plans and operates housing for low income families. More specifically, the PHA obtains financing for housing and construction through the Department of Housing and Urban Development (HUD) and[11], after construction is completed, the PHA selects tenants and maintains the project.[12]

The CMHA operates as a PHA in the City of Cincinnati, City of Lincoln Heights, Sycamore, Springfield and Columbia Townships, pursuant to Ohio Revised Code § 3735.27[13]. As of October, 1978, CMHA owned or operated six, 169 units of conventional public housing.[14]

### B. The Section 221(d)(3) and Section 236 Programs.

The Section 221(d)(3)[15] program authorizes loan funds for the construction of housing units. The program provides owners of housing units with federal mortgage insurance and interest rates which are below the market rate.

Similarly, the Section 236[16] program provides the developer with an insured market rate project mortgage. The mortgage is constructed to bear a below-market interest rate with the government responsible for the balance of the mortgage payment.

Tenants in 221(d)(3) and 236 projects may receive rent supplemental payments under Section 101 of the Housing and Urban Development Act of 1965, and Section 212(f)(2) of the Housing and Community Development Act of 1974.

### C. The Section 8 Existing Housing Program.

#### 1. The Statutory Framework

Section 8 of the Housing and Community Development Act[17] replaces the Section 23[18] program, the original leased housing program. Under the Section 8 Existing Housing program, a PHA executes an annual contributions contract (ACC) with HUD.[19] The ACC authorizes the PHA to enter into contracts with participating owners for housing assistance payments on behalf of qualified low-income families.[20]

Persons who seek entrance into the Section 8 program apply with the PHA for a Certificate of Family Participation. Certificates of Family Participation are issued to those applicants who satisfy the eligibility requirements.[21] More specifically, the regulations provide:

---

**10.** 42 U.S.C. §§ 1401–1436 (1970 & Supp. III 1973).

**11.** 42 U.S.C. §§ 1410(a), (c) (1970).

**12.** 42 U.S.C. § 1410(g) (1970).

**13.** Defendants' Answer to Plaintiffs' Request for Admissions No. 2 (Plaintiffs' Exhibit No. 18).

**14.** Defendants' Answer to Plaintiffs' Fourth Interrogatories to Defendant CMHA No. 4 (Plaintiffs' Exhibit No. 18).

**15.** 12 U.S.C. §§ 1715*l*(d)(3) and 42 U.S.C. § 1410(g)(3) (1973).

**16.** 12 U.S.C. §§ 1701g–1715 and 42 U.S.C. §§ 1402, 1415 (1973).

**17.** 42 U.S.C. § 1437f (Supp. 1975).

**18.** 42 U.S.C. § 1421b (1970).

**19.** 42 U.S.C. § 1437f(b)(1).

**20.** Id.

**21.** 24 C.F.R. § 882.207.

The PHA shall select families for Certification in accordance with the provisions of this Part and in accordance with the PHA's application, including any PHA rules for preferences as approved by HUD (see § 882.204(b)(1)(i)(C)).[22]

In the event a PHA is unable to honor all outstanding Certificates within its ACC, applicants for Certificates are placed on a waiting list.[23] This procedure is in keeping with the requirement that the PHA "maintain a system to assure that it will be able to honor all outstanding Certificates of Family Participation within the ACC."[24]

Under the "Finders-Keepers" policy, the holder of a Certificate of Family Participation is responsible for finding a suitable dwelling.[25] The low-income family then enters into a lease directly with the owner which is subject to PHA approval.[26] The owner has the responsibility for the rental and management of the unit.[27]

In general, a qualified tenant's rental payments are limited to 25% of his gross annual income. The owner of the unit and the PHA enter into a Housing Assistance Payment (HAP) Contract wherein the PHA agrees to pay the owner the difference between the contract rent and the amount payable by the family.[28]

2. The CMHA Section 8 Program

a. The Administrative Plan

In application for an ACC, CMHA submitted to HUD an Administrative Plan.[29] The Plan sets forth the proposals of CMHA for administering the Section 8 Program in the authorized area.

The Administrative Plan establishes an order of preference for persons with Certificates of Family Participation who desire referrals to available housing.[30] The order of preference is as follows:

*Order of Preference*

1. Displaced families of disabled veterans or servicemen;
2. Displaced families of deceased veterans or servicemen;
3. Displaced families of families of veterans or servicemen;
4. Displaced families;
5. Families of Disabled Veterans or servicemen;
6. Families of Deceased Veterans or Servicemen;
7. Families of Veterans or servicemen;
8. Present residents of CMHA developments;
9. All other families not included in groups 1 through 7 above.

The Administrative Plan also establishes certain constraints which will govern the issuance of Certificates of Family Participation.[31] An addendum to the Plan provides as follows:

13. Lowest priority shall be given to persons now residing in any owned and/or operated developments of Cincinnati Metropolitan Housing Authority.
14. No other preference or priorities will be used.

b. The CMHA ACC.

On November 15, 1976, an ACC was entered into between HUD and CMHA.[32]

**22.** 24 C.F.R. § 882.209(a)(3).

**23.** 24 C.F.R. §§ 882.207(b) and 882.209(a)(5).

**24.** 24 C.F.R. § 882.209(a)(5).

**25.** 24 C.F.R. § 882.103.

**26.** 24 C.F.R. § 882.210.

**27.** 24 C.F.R. § 882.211.

**28.** 24 C.F.R. §§ 882.105 and 882.114.

**29.** Plaintiffs' Exhibit 2.

**30.** Administrative Plan, Plaintiffs' Exhibit 5, pg. 5 and Addendum to Administrative Plan dated November 5, 1976.

**31.** Administrative Plan, Plaintiffs' Exhibit 5, pg. 6 and Addendum to Administrative Plan dated November 5, 1976.

**32.** Plaintiffs' Exhibit 1.

The ACC provides that CMHA undertakes to provide "decent, safe, and sanitary housing for families . . . pursuant to Section 8 of the Act by means of housing assistance payment contracts [HAPs] . . with owners."

Pursuant to the ACC, CMHA has been authorized by HUD to enter into 1,000 (1,056 since August, 1978) such HAPs, not including conversions of Section 23 housing.[33] As of September 8, 1978 CMHA has entered into HAPs for a total of 631 Section 8 Existing Housing Units with owners of such units.[34] And, as of September 8, 1978, CMHA has been permitted by its contract with HUD to grant 425 Certificates of Family Participation in order to fill its allocation of 1,056 units.[35] At that time only 192 Certificates were outstanding. At no time since CMHA began administering the Section 8 Program has the number of HAPs equalled the number of HAPs which could be entered with owners.[36]

Under the ACC, CMHA is prohibited from discrimination in administering the Section 8 program:

"The PHA shall not on account of creed or sex, discriminate in the sale, leasing, rental, or other disposition of housing or related facilities (*including land*) included in any project or in the use or occupancy thereof, nor deny to any family the opportunity to apply for such housing, nor deny to any eligible applicant the opportunity to lease or rent any dwelling in any such housing suitable to its needs. No person shall *automatically* be excluded from participation in or be denied the benefits of the Housing Assistance Payments Programs because of membership in a class such as unmarried mother, recipients of public assistance, etc."[37]

### c. The CMHA Certification Policy and Practice

CMHA maintains a revolving file as a waiting list for Certificates in the Section 8 Existing Housing Program. This system lists applicants chronologically by size of bedroom units sought. Displaced families having preference are placed at the beginning of the file.[38]

CMHA had a policy and practice of refusing to accept applications for Certificates in the Section 8 program from persons who are present residents of developments owned or operated by the CMHA.[39] Plaintiffs Banks and Pickens have been denied Section 8 Certificates on this basis.[40] Subsequently, CMHA has been instructed by HUD to cease the practice of refusing applications of this class of persons, but has been authorized to provide them with "a lower priority for receiving a certificate than applicants who do not already have safe, decent and sanitary housing at rents they can afford."[41] CMHA does not refuse to certify persons for the Section 8 program who are residents of Section 221(d)(3) or Section 236 housing.[42]

In addition, CMHA has a policy and practice of denying Section 8 certification to prior residents of CMHA conventional housing who have an arrearage, unless and until the arrearage is paid.[43] CMHA requested an opinion on this practice from HUD Regional Counsel. HUD's Regional Counsel determined that this policy is "legally supportable."[44] CMHA does provide tenants,

33. Stipulation No. 17 (Doc. 24) and Admission 4, Plaintiffs' Exhibit 13.

34. Stipulation No. 15 (Doc. 24).

35. Stipulation No. 18 (Doc. 24).

36. Id.

37. ACC, Plaintiffs' Exhibit No. 1, paragraph 1.5(c).

38. Stipulation No. 19 (Doc. 24).

39. Stipulation No. 15 (Doc. 24).

40. *Id.*

41. Defendants' Exhibit 3, Letter from Don W. Johnson dated 10/27/78.

42. Stipulation No. 16 (Doc. 24).

43. Deposition of Ramsey F. Findlater, Plaintiffs' Exhibit 14, pp. 20–21.

44. Defendants' Exhibit 10, Letter from Richard J. Flando, Regional Counsel, HUD, dated 9/23/77.

ineligible because of an arrearage, with an informal hearing.[45]

## IV. APPLICATION OF LAW TO FACTS

A. Whether Defendants' Policies and Practices Violate Federal Statutes, Federal Regulations, or the Administrative Plan or Annual Contribution Contract of CMHA.

Plaintiffs contend that the following two practices conflict with federal statutes, federal regulations, or the Administrative Plan or Annual Contribution Contract of CMHA:

1. Refusal to accept applications from *present residents* of CMHA conventional public housing in the Section 8 Existing Housing Program; and

2. Refusal to accept applications for Section 8 housing from *past residents* of CMHA conventional public housing who owe a balance on the past account in the conventional program.

These issues will be considered separately.

1. The CMHA Policy Respecting Present Residents

■ With respect to CMHA's policy and practice relative to present residents of CMHA conventional housing, two problems must be distinguished: (1) whether a refusal to accept applications from present residents of CMHA conventional housing for participation in the Section 8 program violates federal statutes, federal regulations, or the Administrative Plan or Annual Contribution Contract of CMHA; and (2) whether restricting present residents of CMHA conventional housing to a lower priority for receiving Certificates than applicants who do not already have adequate housing at affordable rents violates federal statutes, federal regulations or the Administrative Plan or Annual Contribution Contract of CMHA. The former practice is unlawful, whereas the latter is not.

### a. Denial of Applications

Undisputedly, the prior policy of CMHA was to deny applications from current residents of CMHA conventional housing.[46] This policy was apparently discontinued about October, 1978 at the insistance of the HUD Regional Office.[47] Plaintiffs now argue that those persons, whose applications have wrongfully been denied, be assigned to the CMHA waiting list in accordance with (1) the date of their attempted application and (2) the preferences to which they are entitled under the Administrative Plan.

■ Resolution of this question involves consideration of statutory and regulatory construction in light of the policies articulated in the Housing and Community Development Act.[48] The construction of a statute by the agency charged with its administration is entitled to great weight. *Trafficante v. Metropolitan Life Insurance*, 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972). Deference is even more clearly in order when the construction of an administrative regulation is in issue. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964).

Since concern centers on the interpretation of both federal statutes and regulations, it is appropriate to acceed to HUD's determination that denial of applications to current residents of CMHA conventional housing is not consonant with the applicable statutes and regulations. In addition, this denial conflicts with the Administrative Plan of CMHA which requires that present residents be given a preference and priority.[49]

While defendant previous to October 1978 violated HUD policies, it now appears that

---

**45.** Defendants' Exhibit V.

**46.** See Defendants' Cross-Motion for Summary Judgment at 4.

**47.** Defendants' Exhibit III, Letter from Don W. Johnson, dated October 27, 1978.

**48.** 42 U.S.C. § 1434 (Supp. 1975).

**49.** Administrative Plan, Plaintiffs' Exhibit 2, p. 5 and Addendum to Administrative Plan dated Nov. 5, 1976.

this violation is moot. Accordingly, while those present residents of CMHA conventional housing, otherwise eligible, who have been denied Section 8 certification must be assigned to the CMHA waiting list in accordance with the date of their attempted application they are subject to an order of preference as described herein.

### b. Order of Preference

Although CMHA may not refuse applications of current CMHA residents of CMHA conventional housing, such residents may be assigned a lower priority for receiving a Certificate than applicants who do not already have appropriate housing at an affordable rent. This determination is consistent with the policy and practice recommended by the HUD Regional Office as follows:

It should be understood, however, that residents already receiving the advantages of limited income housing will have a lower priority for receiving a certificate than applicants who do not already have safe, decent and sanitary housing at rents they can afford.

\* \* \* \* \* \*

A priority in this instance basically means that, all other things being equal, an applicant without low-income housing would have priority over an applicant already receiving low-income housing.[50]

This policy also is consistent with the Administrative Plan of CMHA which provides:

Lowest priority shall be given to persons now residing in any owned and/or operated development of CMHA.[51]

In addition, the policy is not inconsistent with federal statutes, regulations or the CMHA ACC.

### 2. The CMHA Policy Respecting Past Residents

CMHA does accept applications from past residents of CMHA housing who have a rent arrearage, but does not certify those residents until the balance has been satisfied.[52] Plaintiffs correctly assert that this policy is not mentioned in the Administrative Plan or the Annual Contributions Contract.[53]

CMHA contacted the HUD Regional Office to request a determination of whether this policy with respect to past residents of CMHA developments was valid.[54] HUD Regional Counsel in Chicago responded and indicated that the policy was "legally supportable" upon the following grounds:

1. The apparent absence of any HUD regulation or policy issuances which prohibit adoption or implementation of the policy in question, either expressly or by implication.

2. The Office of the General Counsel of HUD has opined that a PHA may screen applicants for Section 8 assistance on the basis of factors other than the statutory and regulatory definitions of eligibility \* \* \*.

3. The screening of applicants for Certificates of Family Participation by the PHA for the purpose contemplated by the policy in question apparently meets the applicable criteria indicated by said General Counsel's opinion.

4. The policy in question is consistent with the apparent basic underlying objectives of 24 C.F.R. § 882.209(e)(1) to encourage assisted families to meet lawful obligations for rental payments and thereby maximize effective use of available federal and financial assistance to meet national housing goals.

---

**50.** Defendants Exhibit 3, Letter from Don W. Johnson, dated October 27, 1978.

**51.** Administrative Plan, Plaintiffs' Exhibit 5, p. 6 and Addendum to Administrative Plan dated November 5, 1976.

**52.** Defendants Response to Plaintiffs' Request for Admission 5 (Defendants' Exhibit 13).

**53.** See Plaintiffs' Memorandum in Support of Motion for Summary Judgment at 10.

**54.** Defendants' Exhibit IV, Letter from Richard J. Flando, Regional Counsel, HUD, dated November 27, 1978.

5. [T]he Authority has the power under state law to adopt reasonable policies and regulations necessary to carry out its statutory functions and responsibilities.[55]

Regional Counsel for HUD added, however, that CMHA must satisfy the notification, hearing and other requirements of 24 C.F.R. § 882.209(1) to implement its screening policy.[56]

In support of their position plaintiffs point to a determination by HUD Area Counsel in Boston indicating that Certificates cannot be denied pending payment of an alleged rent arrearage.[57] This determination is not controlling for two reasons: first, the Boston Area Counsel does not have authority over the CMHA; and secondly, those policies and practices deemed to be inappropriate were broader than the policies and practices followed by the CMHA.[58]

■ Hence, the policies and practices of CMHA with respect to past residents do not conflict with the federal statutes, regulations, ACC or Administrative Plan which have been specified by plaintiffs.

B. Whether Defendants' Policies and Practices Violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

Since it has been determined that CMHA's policies and practices relative to present residents of CMHA conventional housing are in derogation of federal statutes and regulations, it is not necessary to reach the constitutional issues with respect to this subclass. See Ohio Bur. of Employment Services v. Hodory, 431 U.S. 471, 489, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). On the other hand, plaintiffs' claims as to former residents have not been resolved upon

examination of the statutory issues and, therefore, as to these claims treatment of the constitutional issues is necessary.

Respecting past residents, plaintiffs make two arguments under the Equal Protection Clause of the Fourteenth Amendment: (1) that the policy serves no rational basis; and (2) that the policy creates an irrebuttable presumption.[59] But before either of these claims can be examined, it must be determined whether there is sufficient state action under these circumstances to warrant invocation of the proscriptions of the Fourteenth Amendment. And, since this claim is brought pursuant to 42 U.S.C. § 1983, the preconditions of this statute also must be satisfied.

1. State Involvement Requirements

There are two state involvement requirements in this action: (1) § 1983 requires that the alleged constitutional deprivation be taken "under color of state law"; (2) the Fourteenth Amendment has its own state action requirements. See Dombrowski v. Dowling, 459 F.2d 190, 194 (7th Cir. 1972). However, for purposes of this determination, "color of law" and state action have the same affect; together, they mean that § 1983 regulates state governmental conduct, as distinct from private conduct.

■ An independent organization may be found to have state involvement if it is involved in a symbiotic relationship with the state government, see, e. g., Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), or if there is nexus between the challenged action and the state regulatory scheme, see, e. g., Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

The CMHA has been created pursuant to § 3735.27, et seq., Ohio Rev.Code, and exercises the statutory powers set forth there-

---

55. Id.

56. Id.

57. Letter from Charles K. More without date (Doc. 24).

58. They included, for instance, not only a payment of past due rent arrearages, but also termination of litigation over the alleged arrearages, and payment of the owner's attorney fees.

59. In fact, an irrebuttable presumption claim more appropriately falls under the Due Process Clause of the Fourteenth Amendment.

in.[60] The CMHA consists of five members: "one member shall be appointed by the Probate Court, one member by the Court of Common Pleas, one member by the Board of County Commissioners, and two members by the Mayor of the most populous city in the territory included in said district. . . ." [61] As such, "[t]he state has so far insinuated itself into a position of interdependence with [CMHA] that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Authority, supra* 365 U.S. at 715, 725, 81 S.Ct. at 856, 861. *See also Ginn v. Mathews*, 533 F.2d 477 (9th Cir. 1976) and *Mathis v. Opportunities Industrialization Centers, Inc.*, 545 F.2d 97 (9th Cir. 1976). Hence, the state involvement requirements of both § 1983 and the Fourteenth Amendment are satisfied.

### 2. *Rational Basis Test*

Plaintiffs contend that their exclusion from the Section 8 program lacks a rational basis because it distinguishes "between those who have lived in CMHA conventional public housing, and left money owing, and those who have lived in other federal housing projects (including other conventional public housing) and purely private housing, and left money owing." [62]

The Fourteenth Amendment demands a reasonableness in legislative and administrative classifications. *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1975). Uneven effects upon particular groups within a class are ordinarily of no constitutional concern, when the basic classification is rationally based. *Personnel Adm. of Mass. v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *New York Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The rationality test requires upholding any classification based, "upon a state of facts that reasonably can

be conceived to constitute a distinction, or difference in state policy. . . ." *Allied Stores v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 443, 3 L.Ed.2d 480 (1959).

The bases for excluding past CMHA residents with a rent arrearage from the Section program are at least two fold: (1) to encourage assisted families to meet lawful obligations for rental payments; and (2) thereby maximize effective use of available federal financial assistance to meet national housing goals. This policy is consistent with the underlying objectives of 24 C.F.R. § 882.209(C)(1).

The interest in maximizing effective use of federal funds would not be served by excluding from Section 8 participation those who have lived in purely private homes and left money owing. As far as those who lived in other federal housing projects—including other conventional public housing— and left arrearages, they may not be readily discernible by CMHA. Hence, there is a rational basis for distinguishing between these classifications of persons who are eligible for Section 8 housing and the classification under consideration including persons who are not eligible.

Although the classifications may not admit to "mathematical nicety" (*Lindsley v. National Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)), it cannot be said that the classifications are "clearly wrong, a display of arbitrary power, not an exercise of judgment." *Mathews v. DeCastro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). The rational basis requirement therefore has been met and no violation of the Equal Protection Clause is present.

### 3. *Irrebuttable Presumption*

Plaintiffs claim under this part that the policy respecting past residents of CMHA is unconstitutionally rigid. More specifically, plaintiffs assert that the policy creates "a conclusive presumption that past residents

---

**60.** Defendants' Response to Plaintiffs' Requests for Admission 2 (Plaintiffs' Exhibit 13).

**61.** Ohio Revised Code § 3735.27(B).

**62.** Plaintiffs' Memorandum in Support of Summary Judgment at 17.

who owe debts to CMHA are not worthy of being Section 8 tenants." [63]

■ But the policy created by CMHA is not a per se determination. CMHA has made provision for an informal hearing when eligibility is denied.[64] The adequacy of the hearing may be challenged, but the policy does not create an irrebuttable presumption that is subject to a Fourteenth Amendment challenge. *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

C. Whether Defendants' Policies and Procedures Concerning Eligibility for Certification in the Section 8 Program Are Made Available to Applicants in Conformity with the Due Process Clause, the National Housing Act and Regulations

Briefly stated, plaintiffs contend under this part that defendants' policies and practices of not certifying past and present residents of CMHA conventional housing for the Section 8 program do not appear in the Administrative Plan, the ACC or federal regulations; nor is the policy in writing or posted. Again, our previous determination renders it unnecessary to consider plaintiffs' challenge relative to the present residents, although this policy will be considered as it applies to past residents.

1. *The Regulations*

Plaintiffs assert that the federal regulations require distribution or posting of the criteria for certification under the Section 8 Existing Housing Program. In this regard, plaintiffs cite the following regulations: 24 C.F.R. §§ 882.116(a), 882.204(b), 882.207(a), and 882.209(a).

■ Plaintiffs' interpretation of the cited regulations misconstrues the purpose of these sections. In fact, the purpose of these sections is to require a PHA to actively participate in informing qualified applicants of the existence of the program and availability of assistance, and in encouraging owners of real estate to participate in the program. Consequently, we find that the regulations do not require publication or

dissemination of the criteria used for determining eligibility in the Section 8 program.

2. *Due Process: Failure to Provide Standards*

Plaintiffs next assert that the Due Process Clause requires that CMHA publish and disseminate the eligibility requirements concerning a past resident with a rent arrearage.

Although CMHA has not published or disseminated eligibility requirements with respect to past CMHA residents, it does maintain informal standards. One of these standards denies eligibility to all past residents of CMHA conventional housing with a rent arrearage. There is no evidence or suggestion of uneven or arbitrary application of this requirement. Moreover, those who wish to contest application of this standard are entitled to notice and an informal hearing.[65]

■ Concededly, publication and dissemination of the standards would be logical and salutory; however, this failure does not constitute a denial of due process. *See Calabi v. Malloy*, 438 F.Supp. 1165, 1174 (D.Vt.1977), modified D.C., 468 F.Supp. 76 (1978). *Colon v. Tompkins Square Neighbors, Inc.*, 294 F.Supp. 134 (S.D.N.Y.1968) and *Holmes v. New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968) are both distinguishable because in those cases no standards for selection of candidates were applied by the Housing Authority and no reasons for denial of eligibility were supplied to the ineligible candidates. "Ascertainable standards" were therefore required to assure a fair and orderly procedure for allocating the supply of housing. In contrast, the procedures employed by CMHA, although imperfect, are fair, orderly and sufficient to satisfy the minimum requirements of due process.

D. *Whether Defendants' Exclusion of Plaintiffs Constitutes an Unlawful Collection Practice*

Plaintiffs' fourth contention is that the policy of excluding from the Section 8 pro-

---

**63.** Plaintiffs' Memorandum in Support of Summary Judgment at 19.

**64.** 24 C.F.R. § 882.209(b).

**65.** 24 C.F.R. § 882.209(b).

gram persons alleged to have prior debts to CMHA is an unauthorized collection practice. To put it otherwise, plaintiffs claim that the CMHA practice (1) violates the statutes and regulations which create the Section 8 program, and (2) allows defendants to proceed in an extra-legal fashion to collect its debts.

With regard to plaintiffs' first claim under this part, we have already considered this matter and determined that the CMHA policy regarding past residents is not in violation of the Section 8 statutes and regulations. Concerning the second claim, the CMHA policy as to past residents is not an unlawful collection practice.

The policy of CMHA concerning past residents is neutral with respect to collection of a rent arrearage; no affirmative action is to be taken by CMHA to collect the debt. The policy does seek to maximize effective use of the limited federal funds available, and it also seeks to encourage assisted families to meet their lawful obligations. Any charge that the arrearage claimed by CMHA is inappropriate or excessive may be brought out at the informal hearing. Hence, the likelihood of improper assessment of the past debt is significantly diminished. Under the circumstances, this practice by CMHA does not constitute an unlawful collection practice.

E. *Whether Defendants' Hearing Procedures Are Adequate to Satisfy Plaintiffs' Right to Procedural Due Process*

As indicated, many of the contentions raised by plaintiffs disappear in the face of a proper post-denial hearing. Therefore it is necessary to carefully examine the hearing procedures established by CMHA to be certain that they satisfy the requirements of the regulations and due process.

Plaintiffs challenge the adequacy of the hearing procedures on several grounds. First, plaintiffs charge that the procedures fail to comply with due process because of (1) a failure to properly notify the class; (2) an inadequate hearing format and (3) the lack of an impartial hearing officer.

Secondly, plaintiffs claim that defendants' failure to establish written guidelines for the hearing procedure violates the regulations and due process.

Defendants do provide for notification and an informal post-denial hearing. The hearing takes place before a CMHA employee serving as a hearing officer. The notification [66] states the reason of ineligibility and, in the case of a past resident with a rent arrearage, the aggregate amount of the debt. The notice indicates that an informal hearing may be requested. No written procedural standards for the hearing have been established and a record of the proceeding is not kept.

1. *Protectible Interest*

The Due Process Clause has been construed to afford protection not only to the traditional property or liberty interests, but also to statutory entitlements, which are conferred by the government to meet the needs of recipients. *See Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (statutory entitlement to welfare benefits for qualified persons); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (statutory entitlement under state law to driver's license). However,

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Stated otherwise,

[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or a materially explicit understanding that support his claim of entitlement to the benefit and that he may invoke at a hearing. *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Protectible interests for due process consideration are not created by the Constitution; rather, they are created by rules or understandings "that stem from an

66. Plaintiffs' Exhibit 7.

independent source such as state law." *Id; see also Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1978). In this case, the sufficiency of the claim of entitlement must be decided by reference to the Section 8 program.

The statutes and regulations under this Section 8 program create an expectancy of government-assisted housing which is enti-tled to some measure of constitutional protection. *Davis v. Toledo Metropolitan Housing Authority*, 311 F.Supp. 795 (N.D. Ohio 1978); Cf. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The regulations require that those persons who satisfy the specific criteria are entitled to a Certificate for Participation in the Section 8 Program. 24 C.F.R. § 882.209(a)(3). Satisfaction of the eligibility criteria may be objectively determined. Thus, this case is analogous to *Griffeth v. Detrich*, 603 F.2d 118 (9th Cir. 1979) in which it was decided that the denial of an applicant's interest in the commencement of welfare benefits under the California Welfare and Institutions Code was a protectible interest under the Due Process Clause. *See also* Tribe, *Am.Con.Law* § 10–9 at 518–519 (1978).

### 2. Adequacy of Procedural Provisions

Having determined that the interest claimed by plaintiffs is one that is protectible, we turn to an examination of the procedures which have been provided to determine whether they provide the process that is due under the circumstances.

Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "[T]he quantum and quality of the process due in a particular situation depends upon the need to serve the purpose of minimizing the risk of error." *Greenholtz v. Inmates of Nebraska Penal & Correctional Institute*, 442 U.S. 1, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979).

In determining the adequacy of procedures required by due process, the personal interest infringed, discounted by the probable value of alternative procedures, must be balanced against the added costs of such alternative procedures. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The personal interest involved in this action is dissimilar to the interests involved in either *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (denial of welfare benefits) or *Mathews v. Eldridge, supra* (denial of disability benefits). Simply stated, the distinction is between termination of a benefit and withholding of a benefit. Denial of a Section 8 Certificate constitutes withholding of a benefit. Hence, the hardship imposed by an erroneous denial of a Section 8 Certificate is not as egregious as termination of welfare benefits or disability benefits for two reasons: first, the Section 8 applicant has not relied upon federally-assisted housing under the Section 8 program; and secondly, the right to Section 8 housing does not attach upon issuance of the Certificate. Limited funds, preferences, or rejection by the owner may deprive the applicant of a Section 8 dwelling even after the Certificate has been issued. Plaintiffs' claim of inadequate procedural safeguards must be considered in the light of this interest and the costs associated with the safeguard requested.

### (a) Adequacy of Notification

Plaintiffs charge that the notice of ineligibility of past residents with an arrearage and of their right to an informal hearing is inadequate because (i) the notice fails to itemize the amount due the CMHA on the past arrearage; and (ii) the notice does not inform the applicant of the procedural rights attending the hearing, including the right to counsel, to confront witnesses, to make an oral presentation, and to a decision based on the facts presented at the hearing by an impartial hearing examiner.

Some of plaintiffs' claims concerning notification have merit. Specifically, notification to past residents denied eligibility because of a rent arrearage must: (1) itemize the amount due, (2) inform the applicant of his right to have counsel present at the informal hearing, and (3) inform the appli-

cant of his right to make an oral presentation. The costs of these additions are minimal; they can be included in the form letter which is presently sent to applicants. As to plaintiffs' other requests these lack merit and are not required upon a weighing of the interests.

#### (b) *Adequacy of Hearing Format*

Plaintiffs next contend that the hearing format is inadequate because defendants are not required to present witnesses and therefore plaintiffs are denied the opportunity to confront witnesses.

This contention is mistaken. Where adverse witnesses are presented, plaintiffs must be afforded an opportunity to cross-examine (*See, e. g., Greene v. McElroy*, 360 U.S. 474, 497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1956)), but defendants are under no obligation to make their record by live testimony. Presentation of documents alone may be sufficient to support their claim.

Accordingly, the hearing format is not procedurally defective.

#### (c) *Adequacy of Hearing Officer*

Plaintiffs charge that the hearing officer must be impartial and that a PHA employee lacks impartiality. This claim is also incorrect.

The regulations allow for a PHA employee to serve as a hearing officer.[67] This policy is sound. The cost of employing an impartial hearing officer would outweigh the personal interest which would be infringed by an erroneous denial.

#### (d) *Record of Proceedings*

Plaintiffs request that a record of the proceedings be kept. A record of the proceedings is required by the regulations[68] and due process. Defendants have not indicated disagreement. Thus, defendants are required to keep a record of the informal proceedings in accordance with the regulations.

#### (e) *Written Guidelines*

As a last claim plaintiffs contend that written guidelines of the procedures to be followed must be published and disseminated.

The regulations require the defendants to include in their Administrative Plan "a description to be used in carrying out each function."[69] Determination of family eligibility is one such function.[70] Therefore, defendants are required to establish, and include in their Administrative Plan, procedures to be followed upon a determination of ineligibility under the Section 8 program based on a past arrearage.

■ In all other respects we hold that the procedural formalities provided by CMHA comport with the due process requirements.

### V. *CONCLUSION*

In accordance with the foregoing, the Court does find as follows:

1. The defendant may not refuse applications of current CMHA residents of CMHA conventional housing but such residents may be assigned a lower priority for receiving a certificate than applicants who do not already have appropriate housing at an affordable rent;

2. Defendant CMHA need not certify past residents of CMHA housing who have a rent arrearage until the balance thereof has been satisfied;

3. The procedures followed by defendant CMHA in granting a post-denial hearing to those former residents denied certification for failure to pay an outstanding balance are adequate to satisfy procedural due process. However, the present procedures must be supplemented by the following:

   (a) Past residents whose application for certification has been denied must be

---

**67.** 24 C.F.R. § 882.209(f).

**68.** 24 C.F.R. § 882.209(f).

**69.** 24 C.F.R. § 882.204(b)(3)(i).

**70.** 24 C.F.R. § 882.204(b)(3)(ii).

advised of the balance owing, the right to have counsel present at an informal hearing, and the right to make an oral presentation at such hearing;

(b) In addition, a record of the informal proceedings must be kept although such record need not be made by a Court Reporter.

(c) Defendants are required to establish and include in their administrative plan procedures to be followed upon a determination of ineligibility under the Section 8 program based upon past arrearage.

Except as provided herein, plaintiffs' motion for summary judgment is hereby DENIED; defendants' motion for summary judgment is hereby GRANTED.

The determination by the Court is such that an award of attorney fees does not appear appropriate. See Marr v. Rife, 503 F.2d 735 (6th Cir. 1974). Each party to pay its own costs.

It is so ORDERED.