ALTHEA TEDFORD & others[1] vs. MASSACHUSETTS HOUSING
FINANCE AGENCY & others[2]
(and a consolidated case[3]).

Suffolk.   November 1, 1982. — January 5, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Massachusetts Housing Finance Agency.   Housing.   Administrative Law*,
Regulations, Hearing.   *Due Process of Law*, Hearing, Administrative regulations.

The State Administrative Procedure Act, G. L. c. 30A, was applicable to
any regulations adopted by the Massachusetts Housing Finance Agen-
cy prior to the effective date of St. 1981, c. 789, § 8, a statute pro-
viding that the agency not be subject to G. L. c. 30A. [693-695]
The Massachusetts Housing Finance Agency is required by St. 1966,
c. 708, § 6 (*a*), to adopt regulations as to any determinations by the
agency under § 6 (*a*) which affect low income rent levels approved by
it under § 6 (*b*).   [693-695]
The absence of valid regulations governing determinations by the Mas-
sachusetts Housing Finance Agency as to rents to be charged for hous-
ing units financed by the agency would not, in the circumstances, re-
quire that tenants be afforded injunctive relief against rent increases in
two housing complexes.   [695-697]
The Massachusetts Housing Finance Agency was not required by due
process considerations to adopt regulations establishing criteria for
evaluating rent increase proposals at housing developments financed
by it, since provisions in the agency's "Policy and Operating Proce-
dures Handbook" and in its governing statute, St. 1966, c. 708, satis-

---

[1] Adrienne Clayton and Genevieve Rozzi.   The plaintiffs brought this
action as a class action, but the class has not been certified.

[2] William Langelier, Paul Donahue, Weston Associates, Inc., Philip
Roderick, and Peabody Properties, Inc.   Certain officials of the MHFA
were also named as defendants.

[3] Frankie Bunyard & others vs. Massachusetts Housing Finance Agency
& another.   This action was brought on behalf of all persons similarly
situated, but the class has not been certified.   The other defendant is
Piano Craft Guild Associates.

fied any due process requirement that the agency develop ascertainable standards to guide its conduct. [697-698]

In the circumstances, tenants of two housing complexes financed by the Massachusetts Housing Finance Agency had no constitutional right to an adjudicatory hearing prior to the agency's action under St. 1966, c. 708, § 6, approving rent increases at the complexes. [698-699]

CIVIL ACTIONS commenced in the City of Boston Division of the Housing Court Department on October 6 and October 27, 1981, respectively.

Motions for preliminary injunctions were heard by *Daher*, C.J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted requests for direct appellate review.

*Raymond J. Brassard* (*Brian M. Hurley* with him) for Massachusetts Housing Finance Agency.

*Barbara J. Rouse* for Piano Craft Guild Associates.

*George A. O'Toole, Jr.*, for William Langelier & others.

*Paul R. Collier, III* (*Deborah L. McCutcheon* with him) for Althea Tedford & others.

*Michael D. Cutler* for Frankie Bunyard & others.

HENNESSEY, C.J. The plaintiffs, residents of two housing complexes financed by the Massachusetts Housing Finance Agency (MHFA), St. 1966, c. 708 (the Act[4]), brought separate actions in the Housing Court, Boston Division, against the MHFA and the developers of the two complexes.[5] They

---

[4] The parties have cited this statute as appearing in Mass. Gen. Laws Ann. c. 23A, Appendix (West 1981). This statute, as amended, is referred to in this opinion as the Act.

[5] Defendants William Langelier and Paul Donahue are general partners in a limited partnership, Landfall West Apartments, that owns the housing complex known as Landfall West, located at 401 Border Street in East Boston. Prior to late 1979, Landfall West was managed by defendant Weston Associates, Inc., a company owned and operated by defendant Donahue. Defendant Peabody Properties, Inc., headed by defendant Philip Roderick, was managing agent for Landfall West from early 1980 to November, 1981. The defendant in the consolidated case, Piano Craft Guild Associates, owns the housing complex known as the Piano Craft Guild, located at 791 Tremont Street in Boston.

sought injunctive and declaratory relief to prevent rent increases and the conversion of the complexes' master electrical metering systems to individual meters. Both the rent increases and the meter conversions had been approved by the MHFA pursuant to its duty, under § 6 of the Act, to approve the rents charged at developments financed by the MHFA.[6] By decisions dated November 18, 1981, and November 24, 1981, a judge of the Housing Court entered orders (1) granting preliminary injunctions as to the conversions of domestic electricity from master to individual metering, and (2) denying preliminary injunctions with respect to the rent increases. On December 15, 1981, the two actions were consolidated for purposes of appeal. A week later the judge allowed the parties' joint motion to report certain legal issues to the Appeals Court and to stay further proceedings pending appeal. G. L. c. 231, § 111. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We allowed the applications by all the parties for direct appellate review.

Althea Tedford is a tenant of Landfall West, a fifty-nine unit apartment complex financed by the MHFA. The MHFA offers mortgage loans at favorable interest rates to developers to construct rental housing in which at least one quarter of the tenants will be low income persons or families. In addition to MHFA financing, Landfall West receives an interest reduction subsidy from the Federal Department of Housing and Urban Development (HUD), reducing the mortgage loan interest rate to one per cent. 12 U.S.C. § 1715z-1(f) (1976 & Supp. III 1981) (section 236 program). As a result, the MHFA and the owners of Landfall West are subject to Federal regulations, codified at 24 C.F.R. 401.1-401.6, issued in connection with the section 236 program.

The MHFA has developed a "Policy and Operating Procedures Handbook" (handbook) governing many of its

---

[6] Because the meter conversion would require tenants to assume the cost of their individual electricity consumption, MHFA treated the meter conversion proposal as a rent increase proposal, and we accordingly so treat it throughout this opinion.

procedures under the Act. In particular, the handbook specifies the materials which an owner must prepare when requesting a rent increase, and the procedure to be followed in reviewing a request. The MHFA considers that, subject to any applicable Federal regulations, the handbook's provisions may be changed by the MHFA at any time. The MHFA asserts that the handbook was "formally adopted and published on July 7, 1981." However, it is not clear to what extent or how the handbook is made available to the public or to tenants of MHFA projects.

Since the spring of 1980, the owners and the MHFA have tried to remedy financial difficulties at Landfall West. In July, 1981, Peabody Properties, Inc., acting on behalf of the owners, submitted to the MHFA a request for a rent increase and a proposal for converting domestic electricity, not including heat, from master to individual metering. The parties agree that notice of the requests was given to the tenants and that a meeting with tenants was held at the Landfall West complex. The tenants were also permitted to submit written comments to the MHFA, and tenant representatives appeared and spoke before the MHFA Management Policy Review Committee (MPRC). The MHFA staff recommendation approving the proposal had been presented to the MPRC before the deadline for submission of, and receipt of, tenant comments. The MPRC approved both the rent increase and the meter conversion. At a later, regularly scheduled meeting, the MHFA board of directors, following the recommendation of the MPRC, approved the rent increase for Landfall West in a single vote approving rent increases for eleven developments.

Tedford then filed an action contending that the process used by the MHFA to consider the proposals was defective because it was a sham, and because the MHFA was operating in violation of the Act, and the State Administrative Procedure Act, G. L. c. 30A, in failing to adopt regulations establishing standards for making rental determinations.

Frankie Bunyard is a tenant of the Piano Craft Guild, a 174 unit apartment complex financed by the MHFA in 1974. In addition to MHFA financing, the Piano Craft Guild receives an interest reduction subsidy, funded by the Commonwealth's Department of Community Affairs and administered by the MHFA. Section 13A of the Act. On August 17, 1981, The Shoreline Corporation, acting on behalf of the owners, submitted two alternative rent increase proposals to the MHFA. The first proposal requested a six per cent rent increase and individual meter conversion, excluding heat. The second proposal sought a seventeen per cent increase.

Notices were posted in the building stating that the MHFA would vote on the proposals at its October, 1981, meeting. Bunyard alleges that the tenants were never notified that the proposals would first be considered by the MPRC and that this would be the tenants' sole opportunity, other than by letter, to contest the requests. Bunyard further alleges that the tenants were never informed of the existence of the MHFA handbook. There was a meeting at the complex at which tenants were able to direct some comments and questions to representatives of the managing company.

On September 16, 1981, a tenant inadvertently learned of the September 21, 1981, MPRC meeting. Despite the short notice, at least one tenant appeared and was allowed to make a brief statement. On October 6, 1981, the MHFA board approved the owner's request for a six per cent rent increase and conversion to individual electric metering.

Bunyard then filed an action contending that the meter conversion was an agency policy illegally adopted and implemented, and that the procedure used to consider the rent increase request was invalid because it deprived tenants of a meaningful opportunity to participate, and because the agency had no standards or criteria for approving such requests.

The judge has reported several issues for our consideration, which we summarize as follows. (1) Is the MHFA

an "agency" within the meaning of the State Administrative Procedure Act, G. L. c. 30A, § 1 (2)? (2) Is the MHFA required to adopt and promulgate regulations establishing criteria for evaluating proposals for changing rent levels or for conversion of utility metering to an individual metering system at an MHFA development by the State Administrative Procedure Act, by the Act, or by the United States or Massachusetts Constitution? (3) Is the MHFA required to conduct an adjudicatory hearing, as defined in the State Administrative Procedure Act, with respect to a proposal for changing rent levels or for conversion of utility metering at an MHFA development, by the State Administrative Procedure Act, by the Act, or by the United States or Massachusetts Constitution? In addition, both sides challenge the judge's decision to enjoin the meter conversions and not to enjoin the rent increases.[7]

After the Housing Court's decisions in the instant cases, the Legislature passed an amendment to § 3 of the Act, providing, inter alia, that "the MHFA shall not be subject to the provisions of chapter thirty A of the General Laws." St. 1981, c. 789, § 8. The amendment was effective January 11, 1982.

*Statutory Provisions as to Rent.*

The plaintiffs' principal argument is that the challenged rent adjustments were not made in accordance with regulations required by statute. The plaintiffs contend that regulations were required both by the State Administrative Pro-

---

[7] The defendants also challenge the Housing Court's jurisdiction over the instant cases. General Laws c. 185C, § 3, as amended by St. 1979, c. 72, § 3, grants the Housing Court jurisdiction to adjudicate "civil actions . . . arising under the provisions of common law and of equity and any other general or special law, ordinance, by-law, rule or regulation as is concerned directly or indirectly with the health, safety, or welfare of any occupant." The Housing Court's jurisdiction was greatly expanded by the 1979 amendments. Given that the MHFA was created expressly to relieve a shortage of housing which the Legislature deemed to be "inimical to the safety, health, morals and welfare of the residents of the commonwealth" (St. 1966, c. 708, § 2), we conclude that the Act is a law directly or indirectly concerned with the "health, safety, or welfare" of tenants, and so these cases were within the Housing Court's jurisdiction.

cedure Act, G. L. c. 30A, and by the Act. As to c. 30A, we disagree. The State Administrative Procedure Act does not require an agency to promulgate regulations. Rather, it specifies the procedures to be used in promulgating regulations otherwise required. G. L. c. 30A, §§ 2 and 3. As to the Act, § 6[8] discloses that regulations are required in only a narrow area, namely, certain "determinations" relating to "market rate rental," "below-market rate rental," and "adjusted rental." See § 6 (*a*). Nowhere else in the statute are there words mandating the adoption of regulations pertain-

---

[8] Statute 1966, c. 708, § 6, as amended through St. 1979, c. 632, § 7, provides: "(*a*) The MHFA shall, pursuant to regulations adopted by it, make the following rental determinations for each housing unit located in a project to which MHFA has made or financed a mortgage loan hereunder: (1) the market rate rental, which is the rental which would be appropriate if the project had been originally financed at then current market interest rates; (2) the below-market rate rental, which is the market rate adjusted for the extent to which the applicable MHFA loan interest rate is below such then current interest rates; and (3) the adjusted rental, which is the below-market rate rental, further adjusted downward at least ten per cent to make available units to low-income persons and families who could not otherwise rent units at the below-market rental without expending more than one-fourth of their annual income for such housing. These rental determinations may be reviewed and adjusted by MHFA from time to time.

"(*b*) Subject only to the rights of FHA, if any, the rents to be charged for housing units which receive loans hereunder must be approved by the MHFA. In each project financed under this act not less than twenty-five per cent of the units in the project shall be rented at all times to low income persons or families at the adjusted rental. The remaining units not made available to such low income persons or families shall be made available at rentals not lower than the below-market rental for the unit and sufficiently high as determined by MHFA to achieve and maintain a fiscally sound project. Such determinations may be reviewed and adjusted by MHFA from time to time.

"(*c*) All rentals received by the mortgagor in excess of the below-market rental established for each unit shall be applied, pursuant to such regulations as MHFA shall make and publish from time to time and subject to any applicable requirements of FHA or any other public agency providing rental assistance, supplement, subsidy or other similar payments, to reduce rentals so as to make units more available to low-income persons and families."

In 1982, the statute was amended in a way not material here. See St. 1982, c. 546, § 2.

ing to rents.[9] See, in § 6 (*b*) and (*c*), the references to "rents to be charged" and "rentals," without reference to regulations. Nevertheless, we think that § 6 (*a*) requires regulations as to any determinations under § 6 (*a*) which affect low income rents approved under § 6 (*b*).

The plaintiffs argue, and the defendants appear to concede, that if the State Administrative Procedure Act, G. L. c. 30A, is applicable to MHFA, then any regulations required by the Act were invalid in at least the failure of MHFA to publicize and seek comment upon the regulations before they were adopted. See G. L. c. 30A, §§ 1 and 3. It is clear to us that c. 30A was, but is not now, applicable to MHFA.[10] From this, the plaintiffs urge that the rent adjustments fail. We have said that decisions made without required regulations are invalid (see *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 346 Mass. 739 [1964]), but this principle is to be applied here with reference to the special provisions of § 6 of the Act, which establish the kind of highly specific protection for low income tenants which a scheme of regulations might provide. Even if we conclude that no valid regulations were adopted by MHFA as required by the Act, the plaintiffs failed to show that they were entitled to injunctive relief against the rent adjustments. The conclusion that determinations under § 6 (*a*) of the Act must be made pursuant to regulations adopted by MHFA does not mean that the challenged rents are invalid. The record does not show the relationship between the challenged rents and § 6 (*a*) determinations made by MHFA. The interests and reliance of the property owners

---

[9] The only other statutory reference to regulations is in § 6 (*c*), and is clearly permissive rather than mandatory: "pursuant to such regulations as MHFA shall make and publish from time to time."

[10] The defendants assert that c. 30A never was applicable to MHFA on two grounds: (1) that the Act is so worded that c. 30A by implication is inapplicable; and (2) that the legislation, which rendered c. 30A inapplicable to MHFA (St. 1981, c. 789, § 8), should be applied retroactively to this case and the claims of these plaintiffs. We disagree with the defendants' arguments, because there is nothing in the wording of the enabling statute, or in precedent, to support them.

and investors must also be considered in light of the statutory scheme. Surely, the absence of valid regulations cannot realistically mean that no collectible rents were ever established or that no adjustment in those rents could ever be made. The failure of any tenant to object to the absence of any regulations at any earlier time may be significant in the ultimate disposition of this matter.

The plaintiffs incorrectly contend that *all* tenants who show low-income status are entitled to adjusted rentals. The defendants correctly, but in pejorative style, respond that the plaintiffs mistakenly treat MHFA financed projects as typical "public" housing projects. It can be argued that the language of § 6 (*b*), "[t]he remaining units not made available to such low income persons," requires that all units made available to low-income persons be rented at the adjusted rental. However, the quoted language is at best ambiguous. "Where the draftsmanship of a statute is faulty or lacks precision, it is our duty to give the statute a reasonable construction." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 79-80 (1982). *Massachusetts Turnpike Auth.* v. *Commonwealth*, 347 Mass. 524, 528 (1964). We interpret the statute to best effectuate the legislative intent, viewing the statute as a whole. See *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981); *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975), and cases cited. The Legislature contemplated that while at least twenty-five per cent of the units in MHFA financed projects would be rented to low income tenants at the adjusted rental, the rest of the units would be rented to moderate and high income tenants "at rentals not lower than the below-market rental for the unit and sufficiently high as determined by MHFA to achieve and maintain a fiscally sound project." Section 6 (*b*) of the Act. An income mix was central to the stated goal of "prevent[ing] the recurrence of slum conditions and assist[ing] in their permanent elimination by housing persons of varied economic means in the same projects and neighborhoods." St. 1966,

c. 708, § 2.   Moreover, the Legislature contemplated that the higher rents paid by the other tenants would help to maintain lower rents for the remaining twenty-five per cent of the units.   See Final Report of Special Commission on Low Income Housing, 1965 House Doc. No. 4040, at 40; *Massachusetts Hous. Fin. Agency* v. *New England Merchants Nat'l Bank*, 356 Mass. 202, 211-212 (1969); *Opinion of the Justices*, 351 Mass. 716, 728 (1966).   Although the MHFA could finance a project in which more than twenty-five per cent of the units were rented to low income tenants at the adjusted rental, that decision would be left to the discretion of the MHFA in light of financial concerns.   Sections 6 and 7 of the Act.   While Federal and State rental subsidies have apparently helped to provide lower rents, the MHFA retains its statutory discretion to set rents for up to seventy-five per cent of the units.   Despite the hardship to any low income tenants in those seventy-five per cent of the units, a contrary interpretation distorts the statutory intent and might make the MHFA unable to maintain its projects, thereby threatening the entire mortgage program.

The MHFA's exercise of discretion as to these seventy-five per cent of the units is not entirely without limits.   Tenants could establish grounds for relief by showing that the MHFA abused its discretion or acted in an arbitrary and capricious manner.   Cf. *Caswell* v. *Licensing Bd. of Brockton*, 387 Mass. 867, 877-878 (1983), and cases cited.

*Due Process.*

We are not persuaded by the plaintiffs' claim, based on *Historic Green Springs, Inc.* v. *Bergland*, 497 F. Supp. 839, 851-857 (E.D. Va. 1980), that due process required the MHFA to adopt regulations establishing criteria for evaluating rent increase proposals.   In any event, if interested members of the public are allowed to inspect the handbook provisions, those provisions and § 6 of the Act satisfy any possible due process requirement that the MHFA develop ascertainable standards to guide the exercise of its powers.   See *Daubner* v. *Harris*, 514 F. Supp. 856, 869 (S.D.N.Y. 1981), aff'd, 688 F.2d 815 (2d Cir. 1982); *Baker* v. *Cincin-*

*nati Metropolitan Hous. Auth.*, 490 F. Supp. 520, 530 (S.D. Ohio 1980), aff'd, 675 F.2d 836 (6th Cir. 1982). Section 6 of the Act not only establishes the mandates as to twenty-five per cent of the rental units, but also establishes the over-riding standard for rent determinations: rents are to be kept as low as possible, consistent with the fiscal integrity of the project.

The plaintiffs also contend that, under art. 10 of the Massachusetts Declaration of Rights, they were entitled to an adjudicatory hearing before their rents were raised.[11] "A claim of procedural due process presents two distinct issues. The first is whether due process applies at all. If it is found to apply, the second is concerned with the procedures required in the circumstances of the case." *Lotto* v. *Commonwealth*, 369 Mass. 775, 777 (1976), citing *Regents of State Colleges* v. *Roth*, 408 U.S. 564 (1972).

We do not consider whether the plaintiffs have a property interest in affordable rents implicating due process because we conclude that, even if they had such an interest, they were not entitled to an adjudicatory hearing. Cf. *Hathaway* v. *Commissioner of Ins.*, 379 Mass. 551, 555-556 (1980). In determining what process is due, we balance the competing interests of the tenants and the MHFA. *Mathews* v. *Eldridge*, 424 U.S. 319 (1976). The tenants have an interest in rents they can afford. The MHFA has an interest in maintaining the financial stability of its projects, and thereby of the mortgage program. The program benefits the entire class of low income persons in the Commonwealth by increasing the housing available to such persons. See § 2 of the Act. The success of the program depends on the MHFA's ability to spur private development. Elaborate procedural requirements may frustrate the purpose of the

---

[11] The plaintiffs appear to recognize that the Act does not require a hearing. Nor do the plaintiffs rely on the Fourteenth Amendment to the United States Constitution. However, since we use the analysis of *Regents of State Colleges* v. *Roth,* 408 U.S. 564 (1972), to resolve the plaintiffs' State constitutional claim, our analysis is equally applicable to any right based on the Fourteenth Amendment.

Act by discouraging private investment. *Geneva Towers Tenants Org.* v. *Federated Mortgage Investors*, 504 F.2d 483, 491 (9th Cir. 1974). *Hahn* v. *Gottlieb*, 430 F.2d 1243, 1248 (1st Cir. 1970). Such requirements may also jeopardize the financial stability of projects by unreasonably delaying necessary rent increases. Moreover, the decision to increase rents depends on familiarity with the economic conditions of the project and the housing market, rather than on resolution of specific factual issues. In these circumstances, an adjudicatory hearing is unlikely to add significantly to the accuracy or fairness of the decision. *Id.* Cf. *Thompson* v. *Washington*, 497 F.2d 626, 640-641 (D.C. Cir. 1973) (tenants of *public housing* have adequate opportunity to express their views on rent increase by notice and comment procedures); *Burr* v. *New Rochelle Mun. Hous. Auth.*, 479 F.2d 1165 (2d Cir. 1973) (same). Accordingly, we conclude that the plaintiffs were not entitled to an adjudicatory hearing before their rents were raised.

We think that due process is satisfied, perhaps more than satisfied, if residents have access to the underlying data supporting a proposal and an opportunity to respond, with written comments, to the proposal and the data. See *Geneva Towers Tenants Org.* v. *Federated Mortgage Investors, supra* at 492; *Thompson* v. *Washington, supra.* The handbook apparently provides each of these requirements. Indeed, the handbook also provides for an informal hearing with the MPRC.

*Conclusion.*

In summary, we answer the reported questions as follows:

Question (1): The MHFA was, but is not now, subject to the State Administrative Procedure Act, G. L. c. 30A. See St. 1981, c. 789, § 8.

Question (2): Section 6 (*a*) requires regulations as to any determinations under § 6 (*a*) which affect low income tenants' rents approved under § 6 (*b*). General Laws c. 30A does not require regulations, nor is it now applicable, and constitutional requirements have been met by what has been done.

Question (3): No adjudicatory hearings are required.

On the limited record before him, the judge was correct in declining to enjoin the basic rent increases. By reason of the uncertainties of the limited record, also, we think it was sensible for the judge to enjoin the meter conversions, with the accompanying and perhaps irretrievable costs. Further proceedings are to be consistent with this opinion.

*So ordered.*