#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1842, AT BOSTON

### [CONTINUED FROM VOL. III.]

═══

**PRESENT:**

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE, ⎫
Hon. CHARLES A. DEWEY, ⎬ Justices.
Hon. SAMUEL HUBBARD, ⎭

---

## President, Directors, &c. of the Oriental Bank *vs* The Tremont Insurance Company.

A contract, in a policy of insurance, to pay the loss on a certain day after proof there of, is not a contract to pay interest after that day if the loss be not then paid.

Where underwriters do not contract to pay interest on a loss after the day on which, by their contract, the loss is payable, they are not chargeable with interest after that day, during the time a trustee process is pending against them, which is commenced by a creditor of the assured before that day, if they practise no delay, and are ready, at all times after the loss is payable, to pay it on being discharged from the trustee process; although they do not keep the amount of the loss constantly on deposit, but mingle it with their other funds, and use it in their business. *Aliter*, it seems, if they practise unreasonable delay in making their answers in the trustee process, for the purpose of obtaining a longer use of the money.

ASSUMPSIT to recover a balance alleged by the plaintiffs to be due on a policy of insurance.

The case was submitted to the court on the following facts agreed : The defendants, by a policy dated August 16th 1838, caused Isaac Clapp, for whom it concerned, to be insured $2500, on a building in Boston, against loss by fire for one year. When the policy was made, the plaintiffs had the legal

title to said building, and the policy was in fact made to cover their interest; but this was not disclosed to the defendants, nor known by them, till they filed their answer in a trustee process, as hereinafter mentioned.  On the 17th of December 1838, said building was destroyed by fire, and the defendants had notice thereof and proof of loss, on the same day.  Two days afterwards, the defendants were summoned as trustees of said Clapp, on account of their liability under said policy, in a suit by John Brown and others against Clapp, which suit was duly entered in court and prosecuted.  The defendants having filed their answer, and disclosed therein a notice, given to them by the plaintiffs, of their claim as owners of the building insured, to the amount insured, and annexed to their answer the affidavit of said Clapp, in support of the plaintiffs' claim, the suit was dismissed, and the defendants were discharged therefrom, on the 15th of May 1840.

By the terms of the policy, the loss was to be paid in sixty days after proof thereof.  On the 18th of February 1839, when the sum insured by said policy became payable, the receiver of the Oriental Bank presented to the president of the Tremont Insurance Company the original policy, with the following order indorsed upon it, viz. " Boston, Dec. 20th, 1838. Please pay any loss, that has occurred or may hereafter occur under the within policy, to the President, Directors & Co. of the Oriental Bank.  Isaac Clapp " — and demanded payment.  The defendants declined payment, on the ground that they had been summoned as trustees of Clapp.

After the trustee suit was discharged, the plaintiffs claimed of the defendants the sum insured and interest from the 18th of February 1839.  The defendants refused to pay the interest claimed, because payment of the principal was prevented by the pendency of the trustee process, but were ready and willing to pay the principal; and on the 20th of May 1840, the defendants paid to the plaintiffs' attorneys the sum of $ 2500, neither party waiving any right in regard to the interest.

From the time the loss was payable by the policy, to the time of the payment of the $ 2500, the defendants had, generally, in

a bank, a sum of money on hand, much larger than $ 2500. At some times, however, the amount actually on hand was reduced below that sum ; but by an arrangement with the bank, the defendants' check for that sum would at all times have been paid. And they were at any and all times ready to have paid that sum, when discharged from the trustee process.

On the 26th of May 1840, the defendants tendered to the plaintiffs' attorneys $ 2·08, for interest from the 15th to the 20th of the same May. This tender was refused, and the defendants brought the money into court.

*W. I. Bowditch,* for the plaintiffs. As the defendants agreed to pay the loss in 60 days after proof thereof, it was an agreement to pay at a day certain ; and the law, as a general rule, implies, from such an agreement, a *contract* to pay interest from and after that day — though interest is sometimes said to be allowed as *damages* for breach of the contract. *Dodge* v. *Perkins,* 9 Pick. 385, 386, 388. *Robinson* v. *Bland,* 2 Bur. 1086. *Dennison* v. *Lee,* 6 Gill & Johns. 383. 2 Phil. Ins. (2d ed.) 750, 751. If there had been no trustee process, the defendants would have been bound to pay interest, as part of their implied contract. They deny that they are so bound, in this case, because they have always been ready and willing to pay, and have been prevented by legal process. But they never set apart the money ; on the contrary, they mingled it with their general funds at the bank, where their balance was sometimes less than the amount of the principal sum. And as they impliedly contracted to pay interest, and as the money was in constant use, they are chargeable with interest. *Adams* v. *Cordis,* 8 Pick. 267, 268. *Templeman* v. *Fauntleroy,* 3 Rand. 434. In the latter case, the court say, " the safe and sound doctrine is, that if the party, though restrained from paying, holds and uses the money, (and we must presume he uses, if he continues to hold it,) he ought to pay interest ; because, if the debtor could, under the restraining process, hold the debt for years, without interest, it would offer a strong temptation to him to throw obstacles in the way of the decision of the questions raised " in that process. See also *Hunter* v *Spotswood,* 1 Wash. 145.

*Tazewell* v. *Barrett,* 4 Hen. & Munf. 262, 263. If *Fitzgerald* v. *Caldwell,* 2 Dall. 215, & 1 Yeates, 274, conflicts with the above position, that case has been much shaken by *Willings* v. *Consequa,* Peters C. C. 321, where it was held that the defendant was not liable for interest, because, being liable to pay at any moment, it should be presumed that he had not used the money. Hence it would seem, that if it could have been shown that he had used the money, the decision would have been different.

If the case at bar is to be governed by *Adams* v. *Cordis,* already cited, it cannot be affected by *Prescott* v. *Parker,* 4 Mass. 170 ; for the court, in delivering their opinion in the former case, distinguished it from the latter.

On the same principle which prevailed in *Adams* v. *Cordis,* a trustee who mixes trust funds with his own, at his banker's, is held to have the use of the fund, and is chargeable therefor. *Hilliard's case,* 1 Ves. jr. 89. *Rocke* v. *Hart,* 11 Ves. 58. *Sutton* v. *Sharp,* 1 Russell, 146. *Dunscomb* v. *Dunscomb,* 1 Johns. Ch. 508. *Clarkson* v. *De Peyster,* 1 Hopk. 424. *Garniss* v. *Gardiner,* 1 Edw. Ch. 128. *Boynton* v. *Dyer,* 18 Pick. 6. Paley on Agency, Pt. I. *c.* 1, § 9. And the fact, that the trustee is advised that he cannot safely pay over the money, without a decree of a court of equity, will make no dif ference in such case. 1 Russell & 1 Johns. Ch. *ubi sup Franklin* v. *Frith,* 3 Bro. C. C. 433.

*Fletcher,* for the defendants. Interest, *as such,* is recoverable only on the ground of contract. But the defendants have made no contract to pay interest in this case. They contracted to pay at a certain time, and if, by their own default, they had failed to pay at that time, they would have been liable to pay, *as damages* for non-payment, a sum equal to the legal rate of interest. But damages, by way of interest, or interest, by way of damages, can never be recovered, unless the party is in fault. Here the defendants were in no fault. The money was impounded by legal process. *Prescott* v. *Parker,* 4 Mass. 170, proceeded on these principles. And the only true ground on which interest was allowed in *Adams* v. *Cordis,* 8 Pick. 260, was. that the defendant had agreed to pay interest. The cas ɜ

of *Fitzgerald* v. *Caldwell*, 2 Dall. 215, & 1 Yeates, 274, is clear for the defendants. So are *Knight* v. *Reese*, 2 Dall. 182. *Sickman* v. *Lapsley*, 13 S. &. R. 224. *Child* v. *Devereux*, 1 Murph. 398. *Du Belloix* v. *Lord Waterpark*, 1 Dowl. & Ryl. 16. *Willings* v. *Consequa*, Peters C. C. 303. They all proceeded on the ground that interest is not to be charged, where there is neither an agreement to pay it, nor default in not paying the principal. And though there be an agreement to pay interest, yet if war exists between the nations of the creditor and debtor, interest cannot be recovered after peace is restored ; because the debtor could not lawfully pay either principal or interest during the war. *Hoare* v. *Allen*, 2 Dall. 102. *Foxcraft* v. *Nagle*, 2 Dall. 132. *Conn* v. *Penn*, Peters C. C. 524. *Bordley* v. *Eden*, 3 Har. & McHen. 167.

Where a party is in no fault for not paying, he is never charged with interest because he uses the money. There is no case at law, in which a party has been so charged, unless by the use of the money he had violated his own duty or another's rights. Not only is there no such case, but *Haven* v. *Foster* 9 Pick. 112, decided the contrary. The case of *Dodge* v. *Perkins*, 9 Pick. 384, went on the ground of an unjust detention of the money ; otherwise, it is contrary to *Haven* v. *Foster*.

The cases in chancery, where interest is charged on trustees, &c. who mingle their own funds with those of their *cestuis que trust*, all go on the ground of misconduct in the trustee, either by omission or commission.

*B. R. Curtis* replied.

HUBBARD, J. The only question for the consideration of the court is, whether the defendants are bound to pay interest on the amount of the loss on the policy underwritten by them, from the time the same was payable by the terms of the policy. to wit, the 18th of February 1839, to the 15th day of May 1840, when they were discharged from the trustee process which had been pending against them, from the 19th of December 1838, to that time. The plaintiffs assume several positions, upon which they rely to charge the defendants with interest ; and among others, that this was a contract to pay

1 *

interest in sixty days after proof of loss of the subject of insur ance ; that, as stakeholders, they should have set apart a spe-cial sum to cover this loss, and not have mingled it with their funds ; that the plaintiffs lost the use of the money, and the defendants had the use of it, and consequently the plaintiffs have the better equity.

The question submitted is not free from difficulty arising out of the great number of decisions in relation to the payment of interest. Nor is it practicable to reconcile all the opinions that have been pronounced in different courts, both in this country and in England. Many of the opinions, however, which appear to be contradictory, may be reconciled by considering the different facts which led to the decisions. So that while the cases appear, on a cursory inspection, to be alike, they will be found, on a more careful examination, to differ in important particulars. The authorities relating to interest have been so often cited and reviewed, that it appears to me to be unnecessary to subject them to a new examination ; although the elaborate arguments of the counsel on both sides might seem to demand it. Those only, therefore, will be referred to, which seem to require remark, as bearing on the opinion we have formed.

By the Rev. Sts. *c.* 109, § 34, it is enacted, that " any money or other thing, due to the principal defendant, may be attached before it has become payable, provided it be due abso-lutely and without any contingency, as before mentioned ; but the trustee shall not be compelled to pay or deliver it, before the time appointed therefor by the contract."

Two days after notice and proof of the loss, and before the same was payable, the defendants were summoned as the trus-tees of Clapp, the person with whom the contract was made , and this was before they had notice of the plaintiffs' claim. It was then rightfully attached at the time, as the property of Clapp ; and when the plaintiffs exhibited their order from Clapp for the payment of the money to them at the termination of the sixty days after notice of the loss, the defendants were under no legal obligation to pay them the amount due on the policy ; but their duty was, to give notice of the fact, in their answer, that

the claimants might appear, if they saw cause, and maintain their right to the money. This was done ; and on their examination, the claimants exhibited such proof of their interest in the property insured, and in the policy, that the defendants were discharged from the trustee process, and released from their liability as the trustees of Clapp, and could pay over the money to the plaintiffs with safety to themselves. In their conduct in this respect, they appear faithfully to have discharged the duty imposed upon them, with due diligence and a just regard to the rights of the contending parties ; and as the fund was locked up before it became payable, they were in no default in not paying over the money at the call of the plaintiffs   Not being in default then, are they accountable for interest during such detention ?   The cases, which have been cited directly to this point, are so far contradictory as to leave the question, to some extent, unsettled.   The cases especially relied upon by the plaintiffs are *Hunter* v. *Spotswood,* 1 Wash. 145 ; *Tazewell* v. *Barrett,* 4 Hen. & Munf. 259 ; and *Templeman* v. *Fauntleroy,* 3 Rand. 434.   And on the other side, the case of *Fitzgerald* v. *Caldwell,* 2 Dall. 215, & 1 Yeates, 274, is believed to be directly in point.

In the three Virginia cases, there is the charge of negligence and neglect of duty resting upon the garnishee, which probably led to the decisions in those cases ; while in the case decided in Pennsylvania, those elements are excluded ; although if they had existed in that case, the court would have charged the garnishee with interest.

Two cases were cited from our own reports ; *Prescott* v. *Parker,* 4 Mass. 170, and *Adams* v. *Cordis,* 8 Pick. 266. In the first of these, a judgment debtor was summoned as the trustee of the judgment creditor ; and the court, in delivering their opinion, say, " it is admitted that the judgment has been satisfied, unless Parker is liable by law to pay interest on the judgment until it was satisfied.   Interest is allowed in an action of debt on judgment, as the measure of damages for unjustly detaining the debt.   In this case, he was obliged by law to detain the debt from Gilson ; and therefore he cannot be answer-

able to the attaching creditor for damages for the detention."
In the case of *Adams* v. *Cordis*, the defendant had been sum
moned as the trustee of the principal debtor, and on his disclo-
sure it appeared that the demand against him was one which
bore an accruing interest at the time ; and the court decreed
that the trustee should pay the interest as well as the principal
during the detention of the fund, on the ground that the attach
ment of the debt carries with it the interest. And this distinc
tion is taken between cases in which interest is given by way of
damages, and those in which it constitutes a part of the debt ;
as it does in contracts in which there is a promise to pay inter-
est. In the former class, it is obvious that when one is sum-
moned as trustee, he is in no fault for not paying, and as he made
no express agreement to pay interest, he ought not to be charged
with it. In the latter, the interest is the debt as much as the
principal, and he ought to pay it. This distinction we believe
to be a just one ; and the question now is, under which class
the present action ranges. The plaintiffs' counsel have argued
that the contract of the defendants contains within itself a prom-
ise to pay interest, and that it might be declared upon as a con-
tract in which the party stipulates to pay interest after the same
becomes due ; on the ground that this is the legal effect of the
contract. But we do not sustain this view. We think that
such a declaration would not describe the contract. Interest is
not an integral part of such contract, but is given by way of
damages for the non-performance of the contract. For in mat-
ters of property, the usual rate of interest has long been estab-
lished as a just rule for the measure of damages in cases where
the plaintiff has sustained an injury by the non-performance of a
contract by the defendant.

The policy before us has been likened, in argument, to a note
payable at a given time, with interest after. But on this policy,
the money is not payable at any given time. The amount to be
paid, and the time when, are both uncertain. The amount of
the loss is payable after proof of loss, and a consequent notice
and demand of the defendants. In the case of bank bills,
which are but the promissory notes of a corporation, payable on

demand, the court say, in *Suffolk Bank* v. *Worcester Bank*, 5 Pick. 109, " the bank bills or notes sued were promises to pay money on demand, without any engagement to pay interest. Interest was no part of the contract ; but after demand and non-payment, interest would be recovered in the form of damages for detention." And so in the present action. Till within a few years, interest has not been allowed on policies of insurance. It was a matter within the discretion of a jury. And the rule now followed in England, as stated by Lord Tenterden, in *Barn* v. *Case*, 3 Car. & P. 498, is this : " The assured cannot recover interest, unless he has made application to the insurer to pay the amount of the loss, and has notified him of the ground of such his application." This is similar to the rule adopted here ; yet the contract itself, in this particular, has undergone no change since courts decided that interest was not recoverable. The contract of insurance is, as has often been observed, a contract of indemnity. It is no engagement to pay a given sum, but an amount not exceeding a given sum, on the happening of certain perils ; and certain duties must be performed by the plaintiff, before he can maintain his suit. We therefore think there was no express promise to pay interest.

It has been contended that the defendants mingled the funds of the plaintiffs with their own, and that they are therefore chargeable with interest. But while cases of that description furnish an argument bearing on the present, they are in themselves different ; and the reasons why interest is allowed rest upon other grounds. Executors, guardians, and trustees, are intrusted with the property of others ; and when they mingle the funds thus intrusted to them with their own, they are chargeable with interest, in equity, not because they have contracted to pay it in such an event, but as a penalty for violation of duty, and as a suitable remedy for those whose property is thus made liable to loss.

But it is also alleged as a reason why these defendants should pay interest, that they are stakeholders, and should have deposited the plaintiffs' money, and not have exposed it to the hazard of their own trade · and that it was not sufficient to have

a balance in the bank, usually large enough to meet the plaintiffs' demand. A stakeholder is one who has received the funds of another, or others, in special deposit for a given purpose, to be paid to one party, or divided between both or among all the parties, on the happening or not happening of some anticipated event, of which the stakeholder is often the judge ; and such property he is bound to hold separately from his other funds. But the present is not the case of a stakeholder, and it merely assumes the likeness in consequence of the contention of creditors for the fund ; a fact having no connexion with the original contract.

In regard to making a deposit of the money, in cases like the present, we know of no law or usage which requires it, nor any practice for bringing the same into court. Besides ; would a deposit of this money in one of the banks of the city have protected the defendants, in case of loss on the part of the bank ? If the money were specially deposited for safe keeping, the bank in which the same is deposited would not be responsible, except for gross negligence. And it has been held, that it would not even be responsible for the frauds of its own officers. *Foster* v. *Essex Bank,* 17 Mass. 479. And if not specially deposited, then the party would have only the credit of the bank, which the party had in this case, by the promise of the bank to answer the defendants' check, at any time, to an amount equal to the plaintiffs' demand. If the funds in the one case had been stolen, or the bank had failed in the other, the defendants would still be liable, and they and not the plaintiffs would have a claim upon the bank.

Under these circumstances, we think the defendants are not chargeable with interest. They were always ready to pay the demand, and did pay as soon as the plaintiffs had acquired a legal right to receive it, as ascertained by the competent tribunal.

We are aware that in the case of *Adams* v. *Cordis,* the fact that the defendant used the money, for which he was chargeable as trustee, in common with his other funds, during the pendency of the process, was mentioned as a reason why the plaintiff

should recover interest. But without deciding, in this case, how far the use of the money may be a ground for charging trustees with interest ; we think the main reason, upon which the decision in that case rests, is, that the debt was one drawing interest, and that the payment of accruing interest was as much a part of the contract, as the payment of the principal.

But it is said that the refusal to allow interest on money in the hands of persons summoned as trustees will lead to collu-sion, and to unreasonable delay and negligence in making their answers, for the purpose of obtaining a longer use of the money. In answer to this suggestion, it may be stated, that the court incline to the opinion that should such a case arise, it would form an exception to the rule adopted in the decision of this case, and that on proof of such facts, the party would be charge-able with interest on the funds in his hands.

As to the principle contended for, that the plaintiffs lost the use of their money and the defendants enjoyed it, and that they should therefore be charged with interest, because the plaintiffs have the better equity, it may be said that the plaintiffs did not give the defendants notice as soon as they acquired an interest in the policy ; and that if they had done so, the trustee process might not have been prosecuted. But waiving such a considera-tion, both parties were subjected to inconvenience ; the one from the detention of their demand, and the other from being compelled to employ counsel, attend court, and make answers under oath to various interrogatories, with a liability to be re-moved from court to court. If the contract had carried interest on the face of it, the plaintiffs would have the advantage of it ; but as it did not, the defendants may, under the circumstances of this case, avail themselves of the fact that they have not vio-lated their contract by wrongfully or unreasonably detaining the plaintiffs' money, and so are not chargeable with interest.

*Plaintiffs nonsuit.*