NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-951

KEVIN D. WAGNER & another[1]

vs.

SRAMOWICZ DEVELOPMENT, LLC, & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a five-day jury trial in the Superior Court, defendant Sramowicz Development, LLC, appeals from a judgment entered in favor of the plaintiffs, Kevin D. Wagner and Bei Wagner, arising from their purchase of property in Lexington. The defendant argues that the plaintiffs did not prove breach of contract, negligent misrepresentation, breach of express warranty, breach of the implied warranty of habitability, or damages.  We affirm.

---

[1] Bei Wagner.

[2] Paul Sramowicz; Michael P. Sramowicz; and Goldsmith, Prest & Ringwall, Inc.  Sramowicz Development, LLC, is the only defendant that participated in this appeal.

Background.  In 2014, the defendant bought the property. On it was a Cape-style house built in 1952 that had sump pumps in its basement and a pipe going down the driveway.  In its backyard was a retaining wall.  The defendant tore down that house and built a five-bedroom, 5,100 square foot house on the property.  Because the property had a high water table, the defendant designed the new house so that its foundation was two feet higher than that of the previous house, and installed a foundation drain and a roof runoff system that directed rainwater out to the yard.  The defendant also removed the retaining wall and regraded the backyard so that it sloped toward the house.

Before they bought the property, the plaintiffs discussed their concerns about a water stain in the basement with one of the defendant's managers, Paul Sramowicz and Michael P. Sramowicz.[3]  In the purchase and sale agreement, the defendant expressly warranted that "the concrete foundation and floor will be free from seepage and leaking of surface water for a period of one year from the conveyance."  On May 20, 2015, the plaintiffs bought the property from the defendant.

_____

[3] Because the Sramowicz brothers have the same surname, we refer to them by their first names.

2

On June 3, 2015, water was seeping into all four sides of the basement. The plaintiffs met with Paul at the house that day. He said that the water was rainwater, but once cleaned up it would not reoccur.

On June 6, 2015, the basement was flooded with water more than an inch deep. In an e-mail message, the plaintiffs notified the defendant that they thought the flooding was caused by defective landscaping that failed to direct water away from the house. Paul replied that "the amount of rain within a 24 hour period was very unusual," and the area was "simply overwhelmed" because the lawn was not established and the sprinklers were set to operate several times a day. That afternoon, Paul came to the house, set up a dehumidifier and fans to remove water from the basement, and arranged for a water damage clean-up service. After inspecting the exterior of the house, Paul told the plaintiffs he had adjusted a stuck pop-up valve which he believed caused the flooding. That evening, the plaintiffs sent the defendant an e-mail message stating that the "gravity-fed drainage system is obviously failing" and demanding that the defendant "install a sump pump immediately."

On June 9, 2015, the plaintiffs informed the defendant that the adjustment of the pop-up valve and installation of the dehumidifier had not solved the flooding. The plaintiffs

requested that the defendant replace the gravity-fed drainage system with sump pumps linked to the foundation drain to avoid flooding the yard with water. The defendant replied that doing so would void the express warranty.

On June 17, 2015, the plaintiffs sent Paul an e-mail message to "[p]lease pick up all of your equipment . . . left behind in our basement." At some point after that, the plaintiffs' attorney sent the defendant a cease-and-desist letter.

The plaintiffs hired a company that installed two sump pumps and two dry wells. The plaintiffs also hired a landscape architect who regraded the property so that water would flow away from the house. However, the sump pumps ran frequently, resulting in the flooding of the plaintiffs' yard, a neighbor's yard, and the street. In 2016, the plaintiffs sought permission from the town to drain the water pumped from their basement into the town's stormwater drainage system. The town denied permission because the basement was lower than the groundwater level.

Between 2019 and 2024, the plaintiffs' basement flooded about five times. The plaintiffs hired a contractor who proposed that they fill in the basement and build an addition to contain utilities and storage, at an estimated cost of $768,000.

4

The plaintiffs filed the complaint, asserting claims including that the defendant breached the express warranty that the foundation would be "free from seepage and leaking" for one year after conveyance. At trial, the defendant argued that it had proposed solutions to the water seepage but the plaintiffs had "caused their own problem" by installing the sump pumps below the level of the groundwater. The jury returned a special verdict finding the defendant liable for breach of contract, negligent misrepresentation, and breaches of the implied warranty of habitability, express warranty, and implied warranty, and awarded the plaintiffs $475,000 in damages. Judgment entered for the plaintiffs, and the defendant appeals.

Discussion. 1. Excuse. The defendant argues that it was excused from performance of the contract, including the express warranty, because after it refused to install sump pumps the plaintiffs voided the warranty by "devis[ing]" a solution involving sump pumps and "banish[ing]" the defendant from the property with the cease-and-desist letter.

The jury heard testimony about the solutions the defendant proposed during June 2015 to alleviate the water in the plaintiffs' basement. In closing, the defendant's counsel argued that the defendant was not required "to go onto the property to figure out what's going on if they are getting

5

correspondence from [the plaintiffs'] lawyers saying stay away."
It was for the jury to resolve the conflicting testimony about
whether the defendant breached the contract.  See G.M. Abodeely
Ins. Agency, Inc. v. Commerce Ins. Co., 41 Mass. App. Ct. 274,
279 (1996).  Based on the judge's instructions, none of which
the defendant challenges on appeal, it was also for the jury to
determine whether the plaintiffs fulfilled their duty to
mitigate damages.  See David v. Kelly, 100 Mass. App. Ct. 443,
452 (2021) (jury presumed to follow judge's instructions).

Though the defendant argues, as it did before the jury,
that the cease-and-desist letter excused it from performance of
the contract, it never introduced that letter as an exhibit at
trial.  No copy of the letter is included in the appellate
record.  In those circumstances, we do not second-guess the
jury's verdict finding the defendant liable for breach of the
contract and the express warranty.

2.  Negligent misrepresentation.  The defendant argues that
language in paragraph 50 of the contract precluded the
plaintiffs from recovery for negligent representation.  Based on
the plain language of the contract, we disagree.

Paragraph 50 stated that "[e]xcept for the 'BUILDER'S
WARRANTY' attached hereto as EXHIBIT 'E', there are no
warranties, representations or guarantees not expressly

6

contained herein, and . . . the premises are to be delivered to the BUYER in an 'as-is' condition." The builder's warranty, exhibit E, stated, "Notwithstanding anything to the contrary contained in this Agreement, the Seller gives to the Buyers the following limited warranty. . . . "WE warrant that the concrete foundation and floor will be free from seepage and leaking of surface water for a period of one year from the conveyance." Thus, paragraph 50 made clear that the express warranty in exhibit E controlled. Contrast Sound Techniques, Inc. v. Hoffman, 50 Mass. App. Ct. 425, 434 (2000) (clause acknowledging plaintiff had not relied on representations outside contract precluded claim for negligent misrepresentation based on parol evidence).

Applying the judge's instructions on negligent misrepresentation, the jury could find, based on the evidence, that the defendant made false statements to the plaintiffs about water issues at the property on which the plaintiffs relied to their detriment. See DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 799-800 (2013). See also Pietrazak v. McDermott, 341 Mass. 107, 109-110 (1960) (contractor's statement "there would be no water in the cellar" actionable as false statement even without intent to deceive). "A claim for negligent misrepresentation is ordinarily one for a jury," Nota Constr. Co. v. Keyes, 45 Mass.

7

App. Ct. 15, 20 (1998), and here the jury resolved that claim in favor of the plaintiffs.

3. Implied warranty of habitability. The defendant contends that the plaintiffs failed to prove breach of the implied warranty of habitability because the house was never uninhabitable.

As the judge instructed, to prove a breach of the implied warranty of habitability, the plaintiffs were required to establish that (1) they purchased a new house from the defendant, "(2) the house contained a latent defect; (3) the defect manifested itself only after its purchase; (4) the defect was caused by the builder's improper design, material, or workmanship; and (5) the defect created a substantial question of safety or made the house unfit for human habitation." Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 71 (2021). See Albrecht v. Clifford, 436 Mass. 706, 712-713 (2002). From the evidence that the basement flooding could cause mold and that the plaintiffs were concerned for their children's health, the jury could conclude that the defect created a substantial question of safety. The plaintiffs did not have to establish that the entire house was uninhabitable.

4. Damages. Finally, the defendant argues that the amount of damages awarded by the jury was not based on competent

evidence of the cost of remediating the seepage.  The argument is unavailing.

We apply a "highly deferential" standard in assessing the evidence supporting a jury's award of damages "and will overturn such an award only if it is 'clearly excessive in relation to what the plaintiff's evidence ha[d] demonstrated damages to be.'"  Trites v. Cricones, 105 Mass. App. Ct. 246, 256 (2025), quoting Spinosa v. Tufts, 98 Mass. App. Ct. 1, 10 (2020).  "The basic principle of contract damages is that the aggrieved party should be put in as good a position as if the other party had fully performed."  Laurin v. DeCarolis Constr. Co., 372 Mass. 688, 691 (1977).  Contract damages are determined by calculating the damage to the plaintiff from the defendant's breach.  See 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 523 (2019).

If the defendant had fully performed the contract, the plaintiffs would have obtained a house with a foundation "free from seepage and leaking" for one year after conveyance.  The jury heard abundant evidence of the measures the plaintiffs took to remedy the seepage and leaking.  The plaintiffs' contractor estimated that it would cost $768,000 to fill in the basement and build an addition; the jury awarded the plaintiffs $400,000 for property damage and $75,000 for expenses.  Where, as here,

9

the evidence at trial proved a sufficient basis to support the claim for damages, we defer to the jury's assessment.  See Spinosa, 98 Mass. App. Ct. at 10-12.

Judgment affirmed.

By the Court (Blake, C.J., Neyman & Grant, JJ.[4]),

Clerk

Entered:  January 22, 2026.

---

[4] The panelists are listed in order of seniority.