NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

24-P-1132                                          Appeals Court

LINDA DUCHARME  vs.  MOBILE HOME RENT CONTROL BOARD OF CHICOPEE & another.[1]


No. 24-P-1132.

Hampden.     October 8, 2025. – May 22, 2026.

Present:  Meade, Neyman, Walsh, JJ.


Mobile Home.  Manufactured Housing Community.  Municipal Corporations, Special act, Rent control.  Administrative Law, Hearing, Judicial review, Standing, Substantial evidence.  Housing Court, Jurisdiction.  Jurisdiction, Housing Court.  Rent Control, Mobile home, Rent increase, Judicial review.  Practice, Civil, Review of action of rent control board, Review of administrative action, Standing.



    Civil action commenced in the Western Division of the Housing Court Department on March 3, 2023.

    The case was heard by Jonathan J. Kane, J., on motions for judgment on the pleadings.


    Ryan K. O'Hara for the intervener.
    Daniel Ordorica for the plaintiff.
    Mark J. Albano, for the defendant, was present but did not argue.

_____

    [1] Jean Real Estate, Inc., intervener.

NEYMAN, J. The plaintiff, Linda Ducharme, brought an action in the Housing Court for review of a decision by the mobile home rent control board of Chicopee (board) allowing the defendant intervener, Jean Real Estate, Inc. (Jean), to increase rent in three manufactured housing communities (parks). On cross motions for judgment on the pleadings, a Housing Court judge determined that due to technological issues with an Internet-based video conferencing platform used during the public hearing and inaudible portions of the resulting audio recording and transcript, the board's decision must be set aside because it was "in violation of constitutional provisions and made upon unlawful procedure."

On appeal, Jean argues that the Housing Court lacked jurisdiction over the matter, the plaintiff had standing only to challenge the board's decision as to the one park where she is a tenant, the plaintiff's substantial rights were not violated at the hearing, the plaintiff waived her objections to the technological issues at the hearing, and that the board's decision was supported by substantial evidence. For the reasons discussed herein, we vacate the judgment and remand for further findings by the board only as to the park where the plaintiff resides.

Background. 1. Regulatory scheme. In 1977, the Legislature, through a special act, declared "a serious public

emergency" with respect to housing in the city of Chicopee (city) "created by excessive, abnormally high and unwarranted rental increases imposed by some owners of mobile parks located therein."  St. 1977, c. 596, § 1.  To address the emergency, the Legislature authorized the city to establish the board to regulate rents in manufactured housing communities.  See St. 1977, c. 596, § 2.

The board is permitted to make individual or general adjustments to rents to ensure that park owners receive a "fair net operating income" for the units.  St. 1977, c. 596, § 3 (a).  The special act and the related city ordinance define fair net operating income as

> "that income which will yield a return, after all reasonable operating expenses, on the fair market value of the property equal to the debt service rate generally available from institutional first mortgage lenders or such other rates of return as the board, on the basis of evidence presented before it, deems more appropriate to the circumstances of the case."

St. 1977, c. 596, § 3 (a).  See City of Chicopee Ordinance § 195-5(B) (Ordinance § 195).  The special act and the ordinance also state that the fair market value of the property "shall be the assessed valuation of the property or such other valuation as the board, on the basis of evidence presented before it, deems more appropriate to the circumstances of the case." St. 1977, c. 596, § 3 (a); Ordinance § 195-5(C).  Proceedings before the board and judicial review of the board's final

decision are governed by G. L. c. 30A. See St. 1977, c. 596, §§ 4, 5 (a); Ordinance § 195-7(A).

2. Facts. Jean is a corporation owned by Edison Yee, his wife, and his siblings. Jean operates three parks in Chicopee -- Holiday Mobile Home Park Phase I (Holiday I), Holiday Mobile Home Park Phase II (Holiday II), and Kontiki Village Mobile Home Park (Kontiki). These parks are situated on land owned by two trusts. Edison Yee is the sole trustee of those trusts and his mother, Linda Yee, is the beneficiary. The plaintiff is a tenant of Holiday I.

In November 2022, Jean submitted three separate written requests, along with supporting documentation, to the board seeking rent increases at each of the parks (proposals). As to Holiday I, Jean proposed a monthly rent increase of $150.08 for each of the thirty-four sites, including the site occupied by the plaintiff. At the time, Jean collected $89,279 annually in rent at Holiday I. The monthly rent had not been adjusted since 2011 and ranged from $206.27 to $231.27 per site, depending on lot size and location. In calculating the proposed rent increase, Jean determined that Holiday I had reasonable operating expenses of $59,513 and an appraised fair market value of $1.3 million, and that a seven percent debt service rate was applicable. Based on these amounts, Jean claimed a fair net

operating income of $150,513 annually (representing a $61,234 increase from the amount Jean was then collecting).

The plaintiff submitted written objections to Jean's proposed rent increases to the board.  On January 25, 2023, the board held a public hearing on the three proposals.  The hearing was held in a "hybrid" format, with participants appearing in person or using the Internet-based video conferencing platform, Zoom Video Communications, Inc. (Zoom).  Two members of the board attended the hearing in person, and one appeared via Zoom.[2] The hearing transcript reflects that at various times during the hearing there were difficulties with the volume on Zoom such that some remote participants (not including the board member) complained about the audio during the proceeding.

The plaintiff's counsel, who appeared in person at the hearing, made a presentation to the board.[3]  The plaintiff raised two objections as to Holiday I.  First, the plaintiff argued

---

[2] The remaining two board members were excused from the hearing and did not vote.  The chair of the board noted at the hearing that there was a quorum, and no party contends otherwise on appeal.

[3] Although not dispositive on the issues before us, it appears that the plaintiff attended the hearing with counsel, and she does not argue that her ability to participate was hindered in any way.  Rather, as discussed below, she argues that the extent of the technological issues was not apparent to the in-person participants during the hearing and thus could be raised for the first time before the Housing Court judge.

that the board should determine the fair market value for the property based on its "assessed" value of $700,100, as "is legally preferred," rather than on the "appraised" value of $1.3 million proposed by Jean. Second, the plaintiff challenged Jean's inclusion of $19,468.80 annually for land rent as a reasonable operating expense. The plaintiff argued that the board should exclude that amount from the calculation because (1) it was not an expense related to the operation of the park, and (2) it was paid by Jean to the trusts of which Edison Yee is the trustee and Linda Yee is the beneficiary.

At the conclusion of the hearing, the three board members voted to approve the rent increases proposed by Jean for all three parks and implement them in two phases, with half the increase to be added in March 2023 and the other half in March 2024. On February 3, 2023, the board issued a single written decision as to the three parks. Those written findings reflect that the board adopted Jean's calculations. In addition, the board provided two reasons for using the appraised (as opposed to assessed) value for Holiday I: (1) the practice "is consistent with Board precedent"; and (2) "the city assessment of the property may yield a net loss for the owner."

Accordingly, the rent in Holiday I increased by $75.04 in March 2023, and again by the same amount in March 2024.[4]

3. Housing Court proceedings. On March 3, 2023, the plaintiff brought the present action in the Housing Court seeking judicial review of the board's decision under G. L. c. 30A, and a declaratory judgment under G. L. c. 231A. The plaintiff's complaint again challenged the use of the appraised value and the inclusion of land rent as a reasonable operating expense. Jean was permitted to intervene and the parties cross-moved for judgment on the pleadings. In the plaintiff's cross motion, she argued for the first time that the proceedings before the board were defective because of the technological issues for the participants on Zoom, including one board member. At the hearing on the parties' cross motions, the board argued that the judge should not consider any challenge concerning Zoom because the plaintiff did not raise that issue before the board.

On January 7, 2024, the judge issued a written decision explaining that the recording of the board's hearing "is repeatedly inaudible," and the transcript "is replete with references to inaudible comments" and "includes references to Zoom participants being unable to hear the proceedings." The judge noted that while the board member participating via Zoom

_____

[4] Holiday II and Kontiki's rent also increased by the proposed amounts.

was able to state his thoughts about the proposals, "he did not have the benefit of hearing some if not most of the questions and answers posed during the public hearing, rendering the hearing relatively meaningless." In his decision, the judge also noted that the plaintiff "has standing only to challenge the rent increase for the manufactured housing community in which she lives" but that any procedural defects in the hearing related to all three parks. The judge set aside the board's decision in its entirety on the basis that it was "in violation of constitutional provisions and made upon unlawful procedure." Jean now appeals.[5]

Discussion. 1. Housing Court's jurisdiction. Jean first argues that "it is questionable whether the Housing Court in fact could properly exercise [subject matter] jurisdiction in this matter." The special act authorizing the creation of the board contains an explicit provision authorizing review by the District Court and the Superior Court, St. 1977, c. 596, § 5 (a),[6] but no such provision referencing the Housing Court,

---

[5] The board also timely filed a notice of appeal in the Housing Court but did not file a brief in this appeal.

[6] Statute 1977, c. 596, § 5 (a) provides:

> "The district court of Chicopee shall have original jurisdiction, concurrently with the superior court, of all petitions for review brought pursuant to section fourteen of chapter thirty A of the General Laws."

even though the Housing Court in Hampden County was then in existence,[7] see St. 1973, c. 591.  Thereafter, however, the Legislature incorporated the provisions concerning the Housing Court's jurisdiction in G. L. c. 185C, § 3, see St. 1978, c. 478, § 92 & St. 1979, c. 72, § 3, and amended the statute to further define and expand the jurisdiction of the Housing Court. See Tedford v. Massachusetts Hous. Fin. Agency, 390 Mass. 688, 693 n.7 (1984) ("The Housing Court's jurisdiction was greatly expanded by the 1979 amendments").

The 1979 amendments to G. L. c. 185C, § 3, added, in part, that the Housing Court has "jurisdiction of all housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners thereof, arising within and affecting residents" of Hampden County, among other places.  G. L. c. 185C, § 3, as amended through St. 1979, c. 72, § 3.  Relying on this language, this court has explained that "[a] suit [brought under G. L. c. 30A] to correct a rent increase for mobile home occupants that was illegally authorized by public body seems to constitute a 'housing problem' affecting the welfare of that characteristic population."  Quinn v. Rent Control Bd. of Peabody, 45 Mass.

---

[7] In contrast, G. L. c. 30A provides that proceedings for judicial review of agency decisions "shall be instituted in the superior court."  G. L. c. 30A, § 14 (1).

App. Ct. 357, 370 (1998).[8] The same is true here, where the board was created to regulate and control rents to prevent "serious threats to the public health, safety and general welfare of the citizens of Chicopee, particularly the elderly." St. 1977, c. 596, § 1. Moreover, the Supreme Judicial Court has read the broad language of G. L. c. 185C, § 3,[9] to confer concurrent jurisdiction on the Housing Court as to actions brought under statutes that do not include the Housing Court among the list of courts with jurisdiction. See, e.g., Figgs v. Boston Hous. Auth., 469 Mass. 354, 361 n.12 (2014) ("the Housing

_____

[8] We note, as we did in Quinn, 45 Mass. App. Ct. at 370, n.15, that in the present case "[t]here was no objection to the Housing Court's assumption of jurisdiction at the time."

[9] General Laws c. 185C, § 3, also grants the Housing Court concurrent jurisdiction over actions brought under certain enumerated statutes, and more broadly,

"under the provisions of common law and of equity and any other general or special law, ordinance, by-law, rule or regulation as is concerned directly or indirectly with the health, safety, or welfare, of any occupant of any place used, or intended for use, as a place of human habitation and the possession, condition, or use of any particular housing accommodations or household goods or services situated therein or furnished in connection there with or the use of any real property and activities conducted there on as such use affects the health, welfare and safety of any resident, occupant, user or member of the general public and which is subject to regulation by local cities and towns under the state building code, state specialized codes, state sanitary code, and other applicable statutes and ordinances."

G. L. c. 185C, § 3.

Court has jurisdiction under G. L. c. 249, § 4, concurrent with the Superior Court, to review decisions of a public housing authority regarding housing matters" despite the language of G. L. c. 249, § 4, which provides that "[a] civil action in the nature of certiorari . . . may be brought in the supreme judicial or superior court or, if the matter involves any right, title or interest in land . . . in the land court").  See also Berrios v. Department of Pub. Welfare, 411 Mass. 587, 592-593 (1992) (noting that Housing Court is empowered to grant declaratory judgments and adjudicate claims related to procedures required by G. L. c. 30A, even though G. L. c. 30A, § 14 [1] provides that proceedings for judicial review of agency decisions "shall be instituted in the superior court").  In light of this precedent, the Housing Court has jurisdiction concurrent with the District Court and the Superior Court to review the board's decision.

2.  Plaintiff's standing.  Jean next argues that the plaintiff lacked standing to challenge the board's decisions as to Holiday II and Kontiki.  General Laws c. 30A, § 14, permits a "person . . . aggrieved" by a final decision of the board to obtain judicial review.  See St. 1977, c. 596, § 4 (board is subject to G. L. c. 30A, "as if [it] were an agency of the commonwealth").  Such person "must be aggrieved in a 'legal sense' and show that 'substantial rights' have been

'prejudiced.'" Group Ins. Comm'n v. Labor Relations Comm'n, 381 Mass. 199, 202-203 (1980), quoting Duato v. Commissioner of Pub. Welfare, 359 Mass. 635, 637-638 (1971).

As a tenant of Holiday I subject to the rent increase approved by the board, the plaintiff has standing to challenge the board's decision as to that park. See Ginther v. Commissioner of Ins., 427 Mass. 319, 323 (1998) (party who alleges injury that falls within area of concern of regulatory scheme and is direct consequence of complained action has standing). By contrast, where the plaintiff is not a tenant of Holiday II or Kontiki and has neither alleged nor offered proof that raising rents at Holiday II or Kontiki caused her injury, she is not a person "aggrieved" as to Jean's actions related to those two parks. See id. at 323. Of note, the plaintiff brought the present action "in her individual right, and . . . it is not brought by or in behalf of a group under claim of a class proceeding." Duato, 359 Mass. at 638.

We also discern no error in the manner in which the board conducted its proceedings. See Zachs v. Department of Pub. Utils., 406 Mass. 217, 227 (1989) ("administrative agencies have broad discretion over procedural aspects of matters before them"). The issuance of a single decision by the board to address Jean's proposals for the three parks does not alter the fact that the plaintiff is only "aggrieved" by the decision to

raise rent at Holiday I. Jean submitted a separate proposal for each park and the board could have issued a separate decision on each of Jean's proposals. That the board held one public hearing for all those affected by the proposals and addressed all three proposals in a single written decision does not alter the analysis. Indeed, no party objected to this procedure, nothing in the record suggests that the board formally consolidated the matters, and the plaintiff cites no authority that compels any conclusion to the contrary. Cf. Lumiansky v. Tessier, 213 Mass. 182, 188-189 (1912) (absent court order for consolidation, judge has discretion to try cases together that involve common issues, but cases remain distinct and such practice "does not change . . . the rights of the parties, as those rights must still turn on the pleadings, proofs and proceedings in their respective suits. The parties in one suit do not thereby become parties in the other, or a decree in one is not a decree in the other unless so directed" [citation omitted]).

3. Board's decision. Our review of the board's decision to increase rent in Holiday I is governed by G. L. c. 30A, § 14 (7). "General Laws c. 30A, § 14 (7), 'requires us to determine whether a party's substantial rights were prejudiced because the decision was in violation of constitutional provisions, based on an error of law or unlawful procedure, or

unsupported by substantial evidence'" (citation omitted).  Slive

& Hanna, Inc. v. Massachusetts Comm'n Against Discrimination,

100 Mass. App. Ct. 432, 436 (2021).  Our review of the Housing

Court judge's decision is de novo.  See Doe, Sex Offender

Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass.

App. Ct. 85, 89 (2019).

        a.  Hearing.  The judge concluded that the technological

issues at the hearing may have prejudiced the tenants and thus

the board's decision was made upon unlawful procedure.  See

G. L. c. 30A, § 14.  We disagree.

        During the hearing, the board's chair noted on at least

three occasions that he had received complaints from some Zoom

participants regarding difficulty hearing the proceedings.[10]

Although the plaintiff, through her counsel, did not object at

the hearing, she now argues that the issues with Zoom became

apparent only after she received the transcript and audio

recording of the hearing during the Housing Court proceedings

and are therefore preserved for appeal.  Jean, on the other

hand, argues that the plaintiff's claim regarding technological

---

        [10] For instance, at one point, the chair reviewed the chat
function of Zoom and explained, "There is nobody to type the
. . . transcript of the meeting into the chat for those of you
who are in Zoom.  So, I'm sorry if you're feeling like you're
missing parts of the meeting, but . . . Zoom is only capable of
what it's capable of."

issues at the hearing was not raised with the board in the first instance, and is thus waived. Jean's argument is bolstered to some extent by the chair's comments at the hearing which notified the in-person participants of certain technological issues. Furthermore, the plaintiff neither objected nor requested a continuance. In view of these facts, there is a measure of persuasiveness to Jean's contention. See, e.g., Lincoln v. Personnel Adm'r of the Dept. of Personnel Admin., 432 Mass. 208, 213 n.6 (2000). Nonetheless, we will assume for purposes of argument that the technological issues are not waived.

Even with that assumption, we discern no basis to set aside the board's decision. We may set aside a decision made on unlawful procedure if the plaintiff's "substantial rights . . . may have been prejudiced." Sullivan v. Superintendent, Mass. Correctional Inst., Shirley, 101 Mass. App. Ct. 766, 773 (2022), quoting G. L. c. 30A, § 14 (7). "[T]he question is . . . whether the unlawfulness of the [board]'s procedure may have affected the outcome." Sullivan, supra, quoting Rivas v. Chelsea Hous. Auth., 464 Mass. 329, 337-338 (2013).

Here, the plaintiff's counsel appeared in person at the hearing and submitted written objections in advance. The plaintiff had a full and fair opportunity to present her argument to the board and ask questions of Jean's principal.

Furthermore, the board discussed the plaintiff's specific objections at length, and she has not otherwise demonstrated that her substantial rights may have been prejudiced. Indeed, she offered no evidence from any Zoom participants who were residents of Holiday I that their ability to present information or arguments to the board, or to question Jean's principal, was significantly diminished.

Nor, on this record, can the plaintiff successfully challenge the decision based on the participation of one board member by Zoom. That board member responded when directly addressed at the hearing and was able to acknowledge concerns raised during the hearing. While the plaintiff now asserts that "[i]t is difficult to credit [the board member's] immediate responses as indicative that the Zoom was clear and audible given the contradictory statements by others on Zoom," that argument is speculative. Where, as here, a party alleges "irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court." G. L. c. 30A, § 14 (5) (judicial review "shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court"). The record does not reveal what the board member did or did not hear, or whether the participation by Zoom of other Holiday I residents was adversely

affected.  Moreover, the plaintiff failed to take advantage of the mechanism provided under G. L. c. 30A to offer evidence before the Housing Court on that point.  See id.  As such, the plaintiff has not shown that her substantial rights may have been prejudiced by any technological issues with Zoom.[11]

b.  Rent increase.  As set forth above, the board was required to determine Jean's "fair net operating income," which is calculated after determining "all reasonable operating expenses" plus the product of the "fair market value of the property" and the applicable "debt service rate."[12]  St. 1977, c. 596, § 3 (a).  As the Supreme Judicial Court has explained,

"The flexibility contained in the definition [of fair net operating income] is needed in order to administer rent control effectively.  As formulated, it is entirely consistent with the overriding requirement of a reasonable return on investment which we feel to be incorporated in the term 'fair net operating income.'"

---

[11] Notwithstanding the technological issues with Zoom and the audio recording of the hearing, we conclude that the record before us is adequate to review the merits of the board's decision.  We disagree with the Housing Court judge's conclusion that the record "preclud[es] meaningful review."  As discussed supra, we have independently reviewed the transcript and the audio, and the record is far from unreviewable despite some inaudible portions.  We are able to discern and review the relevant arguments made at the hearing and have access to the documents relied upon by the board members.

[12] We confine our discussion to objections raised by the plaintiff before the board.  The parties did not challenge the board's decision as to the applicable debt service rate and we do not discuss it further.

Marshal House, Inc. v. Rent Control Bd. of Brookline, 358 Mass. 686, 706 (1971).  See Chelmsford Trailer Park, Inc. v. Chelmsford, 393 Mass. 186, 193 (1984).

    i.  Fair market value of property.  The special act and the city ordinance provide a presumption that the fair market value of the property "shall be the assessed valuation of the property," but provides the board with the discretion to use a different valuation that the board "deems more appropriate in the circumstances," based on the evidence before it.  St. 1977, c. 596, § 3 (a).  See Ordinance § 195-5(C).

    Relying on the appraisal submitted in support of its proposal, Jean asserted (and the board accepted) that the fair market value of Holiday I was $1.3 million.  In its written decision, the board explained that it

> "was satisfied with the rationale of the appraiser for use of [the $1.3 million] figure as opposed to the city assessment of the property for two reasons:  1) this is consistent with Board precedent, and 2) the city assessment of the property may yield a net loss for the owner."

This rationale is not sufficient, standing alone, to rebut the statutory presumption in favor of using the assessed value.  The fact that the board has used an appraised value in the past does little to explain why such approach is appropriate based on the evidence before the board and "the circumstances of [this] case."  St. 1977, c. 596, § 3 (a).  As to the board's statement that use of the assessed value "may yield a net loss for the

owner," the board failed to explain how that is true in this case, and the board members' remarks during the hearing do not shed further light on that decision.[13]  But see WB&T Mtge. Co. v. Assessors of Boston, 451 Mass. 716, 726 (2008) (although "[t]ax assessors are obliged . . . to assess all real property at its full and fair cash value . . . . that determination is inherently inexact").  The formula used to determine the owner's "reasonable return on investment" contemplates that the owner will receive some profit in addition to all reasonable operating expenses.  Marshal House, Inc., 358 Mass. at 706.  See St. 1977, c. 596, § 3 (a).  As the plaintiff notes, the fair market value determines, in part, the amount of the profit, "not whether there is a profit or loss."

The board has the discretion to use a value other than the assessed value in applying this formula; however, the board's decision must be "accompanied by a statement of reasons for the

---

[13] The board's decision cites to the appraisal.  The appraisal references the tax assessed value of the property, but does not elaborate as to why this amount is not the appropriate valuation.  At the hearing, Edison Yee explained that he was told by the appraiser that Holiday I was "way undervalued" based on a review of rent charged in comparable rent control communities (as described in the appraisal).  He also stated, "[Y]ou can talk about assessed values versus appraised values, but . . . everybody wants to buy your park on assessed value, but you as the owner, are never gonna sell your park on assessment."  The board made no specific findings regarding this testimony.

decision, including determination of each issue of fact or law necessary to the decision." G. L. c. 30A, § 11 (8). See <u>Vinal</u> v. <u>Contributory Retirement Appeal Bd</u>., 13 Mass. App. Ct. 85, 92 (1982). Given the statutory presumption in favor of using the assessed value, the board was required to explain its reasoning for using a different valuation method based on the specific facts before it and the board failed to do so here.[14] Because determining the appropriate valuation "brings into play the experience, technical competence, and specialized knowledge of the [board]," we remand to the board for further findings and explanation (citation omitted). <u>Manias</u> v. <u>Director of the Div. of Employment Sec</u>., 388 Mass. 201, 205 (1983). See <u>Vinal</u>, 13 Mass. App. Ct. at 93 (remand to allow appeal board to revise decision to comply with G. L. c. 30A, § 11 [8]). On remand, the board "need not make detailed findings of all evidence presented to it, as long as its findings are sufficiently specific to

---

[14] We note that on at least two occasions, Jean's counsel requested that the board make a specific finding as to why it was accepting the appraised value.

allow us to review its decision."[15]  Hingham v. Department of Telecomm. & Energy, 433 Mass. 198, 207 (2001).[16]

ii.  Reasonable operating expenses.  Under the special act and city ordinance, the board was required to determine "all [Jean's] reasonable operating expenses" related to Holiday I. St. 1977, c. 596, § 3 (a).  See Ordinance § 195-5(B).  Neither the special act nor the ordinance specifies what qualifies as such an expense and the parties have not pointed us to any local ordinance, rule, or regulation that provides a definition.

The plaintiff challenged the inclusion of the $19,468.80 annual payment for land rent as a reasonable operating expense for Holiday I.  The board considered the plaintiff's argument that land rent is not an expense related to park operations and that the expense was unreasonable given that it was paid for the

---

[15] Remand is appropriate irrespective of the fact that some evidence in the record supported the board's valuation.  See NSTAR Elec. Co. v. Department of Pub. Utils., 462 Mass. 381, 390 n.6 (2012); Manias, 388 Mass. at 205-206.  On remand, the board is free to proceed in whatever manner it deems appropriate.  For instance, it may (but is not required to) reopen evidence to take testimony from the appraiser, as contemplated at the hearing.

[16] The plaintiff also challenges the methodology used by the appraiser and argues that the board abused its discretion in crediting the appraised value.  We do not address that argument given that we do not have a sufficient explanation of the board's decision to adopt the appraised value and such question is for the board to resolve in the first instance.  See Manias, 388 Mass. at 205.

benefit of a family member, Linda Yee.  After consideration, the board likened the payment of land rent to a mortgage payment and expressly accepted it as reasonable.  Given that the board is vested with broad discretion to apply the formula consistent with the special act's objective, we do not disturb the board's findings in this regard.  See Chelmsford Trailer Park, Inc., 393 Mass. at 193.

Conclusion.  The judgment setting aside the board's decision is vacated.  A new judgment shall enter dismissing the plaintiff's action as to the decision affecting Holiday II and Kontiki for lack of standing and remanding the matter as to Holiday I to the board for further proceedings consistent with this opinion.

So ordered.